# George Frey, plaintiff in error *against* Rosewell Wells, esq. and Elisha Harvey, ex'rs of Benjamin Harvey.

Record remitted to the Common Pleas, whereupon *nul tiel record* legal evidence
has been overruled, on a writ of error.

WRIT of error to the Common Pleas of Luzerne county. The
record appeared thus :

A summons issued in debt for 381l. 2s. 11d., returnable to
November term 1797, which was returned served by the sheriff ;
whereupon Mr. D. Smith appeared for the defendants, prayed
oyer of the writ, record, and special imparlance. A declaration
was filed in debt, grounded on a judgment in Litchfield county,
in the state of Connecticut, in March term 1775, "as by the
"records of the same court of Litchfield, and now here ready in
"this court to be shewn, more fully is manifest and appears,
"which said judgment remains in full force and effect not sat-
"isfied or reversed, whereby action accrued," &c. In Novem-
ber *term 1798, the defendants pleaded *nul tiel record*, [*498
with leave to alter, &c. In April term 1802, before Ja-
cob Rush, esq. president, and his associates, the plaintiff pro-
duced in evidence in support of his declaration, a certain paper,
purporting to be an exemplification of the record of the judgment
obtained in the Court of Common Pleas of Litchfield county, in
the suit of George Frey against Benjamin Harvey, the testator,
*prout patet* the exemplification of the record aforesaid, which pa-
per was overruled by the court; whereupon judgment *quod non
habetur tale recordum.*

The record was accompanied by the exemplification of the
judgment of the Connecticut judgment, under the hand of Fred-
erick Wolcott, clerk of the Court of Common Pleas of Litchfield
county, and under the seal of the same court certified 2d Feb-
ruary 1797, and was also certified by Joshua Porter, chief judge
of the Common Pleas of Litchfield county aforesaid on the 15th
November 1799; and further, that the copies were made out
agreeably to the law and usage of the said state of Connecticut.
But the said exemplification was not attached to the record, nor
otherwise referred to therein, except as aforesaid.

[Frey v. Harvey's Ex'rs.]

The objection which prevailed in the Court of Common Pleas of Luzerne county was, that the exemplification was no legal evidence of the judgment, under the act of congress of 6th July 1797, not being stamped; and upon this decision the writ of error was brought. This court determined, upon full argument, that the certificate of the judge required no stamp, and that the exemplification shewn was good and legal evidence of the judgment. During this argument, the counsel on both sides considered the exemplification accompanying the record, as the identical paper offered in evidence to the court below, and upon that ground this court decided.

In December term 1807, at Philadelphia, the counsel of the defendant in error objected, that no final judgment had been given in Luzerne county, whereon a writ of error would lie. The court there had determined, that the plaintiff had failed in shewing his record declared upon; but had not rendered judgment for the defendants.

In debt on a bail bond, the defendant pleaded *comperuit ad diem* and issue thereon: a day was appointed to bring in the record, but the defendant failed therein; whereupon judgment of failure of record and that the plaintiff recover. Lil. Ent. 498. A like entry in 10 Wentw. 456.*

But this objection was withdrawn, a final judgment having *499] *been in fact given, though the prothonotary had omitted to enter the same.

The defendant's counsel then objected to this court's taking any notice of the paper alledged to be the exemplification of the Connecticut judgment, the same not being identified by a bill of exceptions, or any agreement of counsel.

The statute of Westm. 2. was made to remedy faulty decisions, *ore tenus.* 2 Inst. 426. A bill of exceptions lies on a challenge to a juror overruled. Dy. 231. T. Ray. 486. So if a man plead in any action and the justices will not allow thereof. F. N. B. 21, N. (50.) It would seem therefore, that it would have been correct, to have taken a bill of exceptions to the overruling of the judgment in evidence, or to supply it by some agreement.

It may be urged, that oyer was prayed of the record; *non constat*, that it was granted. Nor were the defendants intitled thereto; the records or court being deposited in a certain place, and not removeable. If a bond is brought into court, oyer is grantable only the first term: for afterwards it is adjudged in the possession of the party: so of a recognizance, which is a pocket record. 3 Keb. 1 Ld. Ray. 84. Where a record is of the same court, it is proper to have oyer of it. 2 Ld. Ray. 1179. Where a record itself is shewn to the court in pleading, the defendant cannot say *nul tiel record:* for by the *profert in curia*, it appears to the court that there is such a record: as if letters

* See 1 Crompt. 180, 185, 194. What shall be a failure of the record, see 21 Vin. Ab. 15. N. 17. pl. 8, 9, 10, 11—18. pl. 17.

[Frey v. Harvey's Ex'rs.]

patent are pleaded, the defendant may say *non concessit*, but not *nul tiel* record. Co. Lit. 260, a. Hard. 158. 1 Crompt. 190. 1 Sellon, 382, 383.

The counsel for the plaintiff in error answered, that the present objection was very singular in its nature, after the copy had been deemed and treated as the real paper shewn to the court below.

For every error in point of law, some remedy is assigned. It has been adjudged by this court that a bill of exceptions will not lie to every opinion delivered by the Court of Common Pleas.

It ought to be on some point of law, either in admitting or denying of evidence, or a challenge, or some matter of law arising upon fact not denied, in which either party is overruled by the court. Bull. 318, (310) Show. Parl. Ca. 820. Here the existence of the judgment in Litchfield county was put in issue ; and a copy is offered to prove it. The Common Pleas inspect it, and say it does not prove the fact for which it was introduced. The examination of the paper precedes the courts' opinion, as to its effect. And under such circumstances, no authority or *precedent can be shewn, that a bill of exceptions was [*500 ever taken. Besides the plaintiff in error could have no opportunity whatever of tendering his bill of exceptions : the final judgment for the defendant followed of course the decision of the failure of record ; and it is settled, that the party excepting must tender his bill before judgment. 2 Inst. 427. 1 Bac. 226. (329 new ed.)

Moreover, here oyer was prayed, whereby the exemplification becomes a part of the record itself. 1 Dall. 461. Carth. 513. Crompt. 137. If there was any incorrectness in it, it was the defendant's own fault ; but he was intitled to oyer. Our practice is very loose, and chiefly consists of the declarations and docket entries : it never appears by our dockets, whether the party praying oyer, has it, or not ; but it is always presumed, in case he does not get it, when intitled thereto, he is not compellable to plead, reply, &c. as the case may be. Here the defendants have pleaded *nul tiel record*, and insisted on the want of a stamp as a bar.

The justice of the country can never depend on the agreement of one of the parties, to introduce a certain matter on the record. Such assent will always be refused, where it will be the interest of the party to withhold it.

It being considered that final judgment had passed in the court below for the defendant, it rests with this court to decide, whether it shall be affirmed or reversed. They have no alternative. If it be affirmed, the plaintiff loses a just debt for no fault whatever of his own ; but merely because the court below have committed, what must now be deemed an acknowledged error, in determining, that the certificate of the chief judge in the

court of a sister state ought to have been stamped under the act of congress. If the judgment be reversed, palpable justice is done ; and the rule in England is settled, that where the plaintiff below brings a writ of error, the superior court may not only reverse what is wrong, but give judgment for what is right : but where the defendant below brings error, B. R. only reverses such wrong part of the judgment as he complains of. 4 Burr. 2490, 2156. 2 Stra. 617. 1 Salk. 262.

*Curia advisare vult.*

And now, this term, the record having been removed into the middle district, in pursuance of an act of assembly passed on the 10th April 1807, 8 St. Laws 248, the chief justice delivered the opinion of the court, that having heretofore determined that the exemplification of the judgment in Connecticut was good and legal evidence, though unstamped, the judgment of the Common Pleas of Luzerne county was reversed ; and the *501] *record remitted thither for further proceedings thereon. No reasons were assigned.

BRACKENRIDGE, J. delivered the following opinion.

This is an action of debt, and the plaintiff declares on a judgment of March term 1775, of the county of Litchfield in the state of Connecticut, and states the consideration of the judgment to be a book debt, and the costs and charges of the suit, whereof the testator was in his life time convicted, as by the records of the same court, &c., which judgment remained in full force and effect not satisfied or reversed, wherefore action, &c. To this the defendants plead *nul tiel* record ; to which there is the replication *habetur tale recordum* and issue. On the 22d April 1802, on trial of this issue to the court, the plaintiff produced in evidence, in support of his declaration, a certain paper, purporting to be an exemplification of the record of the judgment obtained in the Court of Common Pleas of the county of Litchfield aforesaid, in the suit of George Frey *v.* Benjamin Harvey, the testator, *prout patet* the exemplification of the record of the judgment obtained in the Court of Common Pleas of the county of Litchfield aforesaid ; which paper was overruled by the court, and which is here transmitted, and purports to be an exemplification of the judgment of the court of Connecticut, and of the proceedings of the said court on which the judgment has been entered, and purports to be under the seal of the said court of Connecticut, and certified by Frederick Wolcott, clerk of the said court, to be a true copy, on the 2d February 1797 ; and also purports to be attested by the chief judge of the said court, and witnessed under his hand on the 15th November 1799.

By the 4th article of the constitution of the United States, sec. 1, "full faith and credit shall be given in each state, to the "public acts, records and judicial proceedings of every other

'state, and the congress may by general laws, prescribe the "manner in which such acts, records and proceedings may be "proved and the effect thereof." The question here arises, whether the judgment of the colony became a record of the state on the change of government, and within the provision of this article. It is within the same reason; and I take it to have been with a view to the inconvenience that had before existed, that the provision has been introduced. The record of a foreign court was not evidence to the court, and must go to the jury proveable by testimony. In the nature of the case, it could not be otherwise; because the judge could not be supposed to know the seal or attestation of the foreign court, so as to try upon inspection. For this, or for other reasons, it was a principle that a foreign judgment could not be declared upon as a record and *nul tiel record was not pleadable. Nor indeed was a [*502 foreign judgment on an issue to the jury, considered as conclusive evidence of the subject of it, but "impeachable by "shewing the injustice thereof, or that it has been irregularly "or unduly obtained." In Walter v. Wittar, Doug. 4, the doctrine, as it would seem, is carried further, that the original merits of the controversy are examinable. For Lord KENYON would seem to have understood it in this point of view, from what he is made to say in a case reported in the note, where he is represented entertaining serious doubts concerning the doctrine laid down in Walker v. Wittar, that foreign judgments are not binding, and that the discussion of those rights could be opened, which had been finally and lawfully settled; against which he enters his protest, and quotes Lord MANSFIELD in Moses v. M'Farland, that "the merits of a judgment can never be over-"hauled by an original suit, either at law or in equity; but till "the judgment is set aside or reversed, it is conclusive as to the "subject matter of it, to all intents and purposes." 5 East 475, note.

Judgments in the courts of the colonies, even though in the particular colony courts of record, yet were not put upon the footing of courts of record in the mother country of Great Britain; and even with respect to each other among themselves, the same principle of jurisprudence was introduced; and the record of one colony was not considered as a record in the other, or pleadable as such, but must be proved on an issue to the jury; and as to the effect of such a foreign judgment when proved, it would follow most probably the determinations of the country from whence we drew our jurisprudence, whether they were that the consideration of the judgment should be traversed again, or that it should be impeachable only by shewing irregularity, and that it was unduly obtained. For I see a great difference between the admitting such a plea as will avoid the judgment on the score of fraud or irregularity, and such as will let in a consideration of the original matter in issue. In the one case the judgment remains *prima facie* evidence; in the other, it is a

nullity.   It was a consideration of those difficulties, most proba
bly, that introduced the provision of the 4th article of the con
stitution.    By this a record of the judicial proceedings of the
one state must in a sister state be considered as a record ; but
the manner of proving, and the effect when proved, shall be
prescribed by congress.   By an act of the 26th May 1790, the
congress have prescribed, that the records and judicial proceed-
ings of the courts of any state, shall be proved or admitted in
any other court within the United States, by the attestation of
the clerk and the seal of the said court annexed, if there be a
seal, together with a certificate of the judge, chief justice, or pre-
siding *magistrate, as the case may be, that the said attes-
*503] tation is in due form.    And the said records and judicial
proceedings authenticated as aforesaid, shall have such faith and
credit given to them in every court of the United States, as
they have by law or usage in the courts of the state, from
whence the said records are or shall be taken.

A question here arises, whether a record so proved shall go to
the court on a verification ?

Before the union of Great Britain and Ireland, a record of the
Irish court was not pleadable as a record ; and even since the
union, it cannot be offered to the court of England with a veri-
fication, but with a conclusion to the country.    For though since
the union such judgments may be records, yet they are only
provable by an annexed copy on oath, the veracity of which is
only triable by a jury.    There is no method of bringing the
original record into court, and consequently no way of trying
its existence, but by an examined copy, and that verified on oath,
of which a jury can only judge and not the court, by whom the
question of the identity of their own records is properly deter-
minable, or if pleadable at all, must conclude to the country and
not with a verification.    5 East 473.    It would seem to me, that
it was an object of the act of congress in pursuance of the con-
stitution, to relieve against the like difficulty in these states,
where the distance of places renders it so much more inconven-
ient in the adducing testimony, on an issue to the jury to prove
the existence of a record ; and if after this provision of the act,
"record or no record," must go to the jury, and the seal proved,
and the handwriting of the attesting clerk and the certifying,
what is there that would seem to have been done to facilitate
the proof of the existence of the record ?   Proof therefore in
the manner prescribed by the act, would seem to me to go to the
court, provided it has been the law or usage of the court from
whence the record has been taken.    In the case now before us
we have no plea, which admitting the record, goes to avoid it
by impeaching its justice or regularity ; nor is there any aver-
ment of the law or usage of Connecticut, which would take issue
to the country ; but the matter stands simply on the question,
record or no record ; and all the court would seem to have had
to inquire was, as to the existence of the record on the proof

offered.   This proof would seem to have been according to the act of congress of the 26th May 1790, prescribing the manner of proof.   But by a subsequent act of the 6th July 1797, a stamp is required to any exemplification of what nature soever, that shall pass the seal of any court ; and by sec. 13, no such deed, instrument or writing, shall be pleaded, or given in evidence in any court, or admitted in any court as available in law or equity, *until it shall be stamped ; which act, by a supplement [*504 thereto, was to take place after the 30th June 1798, and continued in force until the 30th June 1802.   The exemplification in this case was made out and certified before the stamp act, but not before it was offered in evidence, on which ground it is presumable it was overruled, that is, considered as incompetent, in which the court would seem to have erred.   For the act requiring a stamp would seem to have respect to such exemplifications or writings, as should pass the seal of any court after the date of the said act.   The words are, "any exemplification "of what nature soever that shall pass the seal of any court ; " and it is a deed or instrument of writing charged with the payment of a duty, that shall, contrary to the true intent and meaning thereof, be written or printed, which is rendered incompetent to be given in evidence.   But the writing in this case offered, had passed the seal of the court before the existence of the act, and might be given in evidence on the same principle that we admit in evidence a paper not under seal, from an office which had not a seal at the time the document had been obtained and was certified, though the office has since obtained a seal, and the annexing of it becomes necessary to all the official papers that shall be certified, for the purpose of being offered in evidence. For I do not conceive the exemplification as taking date from the certifying of the judge, which was after the act requiring a stamp was in operation.   For it was not until it had passed the seal of the court that it would come to the judge to be certified ; and without which certificate, it would have been an exemplification and evidence before a court in the state where it issued ; and it was only to the proof that it passed the seal of a court, and to make it evidence before a court out of the state, that the certificate became necessary.

But *in limine,* in the order of argument in this case, though at the conclusion as it was offered by the counsel for the defendant in error, the objection occurs, that though a paper purporting to be an exemplification, has come up on the return on the writ of error, yet it does not appear to be a part of the pleadings ; and *non constat,* that it is the paper which was offered as an exemplification and overruled by the court below.

It is regularly true, that a bill of exceptions ought to be upon some point of law, either in admitting or denying of evidence, or some matter of law arising upon fact not denied, in which either party is overruled by the court.   Bul. Ni. Pri. 316.   Tidd 576–7–8.   Whence it would seem, that the *tiel* record must appear

[Frey *v.* Harvey's Ex'ıs.]

in the allegations, and that the overruling may be made a subject of a bill of exceptions.

A bill of exceptions is founded upon some objection in point *of law to the opinion and direction of the court, either as to the competency of witnesses, the admissibility of evidence, or the legal effect of it.

In these cases, it is enacted by stat. Westm. 2, 13 Ed. 1, c. 31, that if the party write the exception, &c., the justices shall put their seals, &c. It is either tacked to the record or not. And the statute extends not only to all pleas dilatory and peremptory, &c., and to prayers to be received, oyer of any record or deed, or the like, but also to all challenges to any jurors, and any material evidence given to any jury, which is overruled by the court. 2 Inst. 426, 427.

I have not found, nor was there produced by the counsel, any entry or form of a bill of exceptions, or case, where it was taken to the judgment of the court, on a plea of *nul tiel record;* because it is the record itself that is produced and not an exemplification. But with us, under the constitution of our courts, and making an exemplification evidence, the reason ceases, and the bill of exceptions ought to have place and will have place ; and if it has not been in precedent heretofore it will hereafter. It seems to be expressly noticed by the above words of Lord COKE, and absolutely necessary, unless the exception has been set forth in the pleadings ; and by this means the paper offered had been tacked to the record. This might be done by the plaintiff under a profert. Records of the same court need not be proffered to the court. Bull. 252. This would imply, that a record not of the same court must be proffered to the court. In an action of debt, profert is matter of substance ; and wherever the plaintiff is bound to make a profert, the defendant is by law intitled to oyer. *Ibid.* But if the plaintiff has not declared with a profert and brought the writing into court, and tacked it to his declaration, as he might do, the defendant may pray oyer and tack it to his plea if he chooses, but he is not bound to do it.

In the Weaver's company, *qui tam* v. Forrest *et al.,* 2 Stra. 1241, the plaintiffs set out their charter, with a profert. The defendants demanded oyer and had a copy of the charter delivered to them ; after which they put in the general issue of *nil debet,* taking no notice of the oyer. The plaintiffs made up the issue, and inserted the prayer and oyer at the head of the pleas, and demanded to be paid for it. The defendants moved to expunge it ; for though the defendants had a right to see, whether the plaintiffs may sue, yet they are not bound to insert the oyer, but may plead to the merits. On the other side, it was insisted, that the demand and giving oyer is the act of the court, whose acts either party has a right to record. But the court held, that if the plaintiffs would avail themselves of the letters patent, they ought to do it, by praying them to be enrolled at the head·of their replication, and ought not to do it at the defendants' ex-

[Frey *v.* Harvey's Ex'rs.]

*pence. · When defendant prays oyer of the bond and condition, and it is recited in *hæc verba,* the condition becomes parcel of the declaration. The defendant after oyer given, may either set forth the oyer in his plea or not, at his election. If he set it forth, the court must adjudge upon it as parcel of the record. · But the defendant is not bound to set it forth in his plea; and if he do not, the plaintiff may pray an enrolment, and so make it part of his replication. Tidd.

If the defendant prays oyer, and afterwards delivers the plea, without making the oyer part of it, the plaintiff may make up the issue with oyer; for the pleadings are supposed to be *ore tenus* at the bar, and a record is to be made of what is done there. 2 Barnes 266. Weaver's company v. Ware.

If a bond is brought into court, oyer is grantable only the first term; for afterwards it is adjudged to be in the possession of the party. The same law of a recognizance, which is a pocket record. 1 Crompt. 134. 1 Ld. Raym. 84. Hence it appears, that it does not follow, that on oyer, the writing necessarily remains in court.

From these dicta, and the like to be found in the books, and from the nature and general rules of pleading and making up records, it is clear, that in England, a paper could not be known judicially, but as coming up under a bill of exceptions or tacked to the record on a profert, to the plea after oyer, or to the replication before issue joined; and even where the pleadings are *ore tenus,* as with us in a great measure on every case, yet it would seem necessary, that it may appear to be the identical paper that was overruled, by other evidence than what is *dehors* the record. It has been returned with the writ of error, as a paper connected with the judgment; and it has been argued upon by the parties represented by their counsel, as the identical paper that was overruled. And I feel it to be an objection to defect of form and am willing to assist to get at the substance, and real fact of the case; but it seems impossible, otherwise than by the court undertaking to know, what does not directly appear on the record. A jury may presume and infer from the probable; but a court is confined to what is on the record, and makes parcel of it. I can see no way to get at this paper in strictness, but by giving leave to discontinue the writ of error, and getting this paper attached before another writ of error is brought, final judgment not having been yet rendered in the inferior court. In that case, the judgment would be reversed, and the same thing attained, which is done by reversing the judgment now. But as the court, myself excepted, think themselves warranted in considering the paper as before them, or for other reasons warrant-*ed in reversing the judgment, the same justice is attained and without delay; with which I am satisfied.  [*507

Judgment of the Court of Common Pleas of Luzerne county reversed, and the record remitted.

Criticised in 6 Wharton 350.