[PHILADELPHIA, APRIL 3D, 1841.]

CRUTCHER and Another *against* THE COMMONWEALTH.

*IN ERROR.*

1. Third persons dealing with a party against whom a judgment has been obtained, are not bound to look beyond the entry of the judgment as docketted by the prothonotary. If the prothonotary have made a mistake in setting down the amount of damages assessed against a defendant, the plaintiff is nevertheless bound as respects such third persons; although the amount of damages is correctly stated in a paper filed in the office.

2. In assumpsit in the District Court on two promissory notes, the defendant had given bail in $9000. Copies of the notes were filed according to the act of assembly, and judgment was obtained for want of an affidavit of defence. Damages were then assessed by the prothonotary, according to a statement and calculation on a paper filed, at $4669 29; but by mistake the damages were entered on the docket at only $1331 50. Security for a stay of execution was then given by the same persons who were bail to the action, in the sum of $2700, with condition for payment of the sum of $1331 50.: *Held*, (1) That the judgment, so far as respected the sureties in the recognisance for the stay of execution, was to be taken as it was entered on the docket; and therefore that the recognisance was valid and binding upon them; (2d) That they were discharged from their liability as bail to the action, by the recognisance for stay of execution.

3. The court in which a judgment is entered, may allow an amendment of the record, as between the parties themselves, and even after a writ of error; but this cannot be done so as to affect the rights of a subsequent judgment creditor, mortgagee or purchaser; nor against bail or sureties for stay of execution.

4. A writ of error lies from this court to the judgment of a lower court upon an issue of *nul tiel record.*

5. When a judgment in such case is removed by writ of error, the practice has been for the record to be certified by the court below without a bill of exceptions, or making the record brought in for inspection a formal part of the proceedings.

6. This practice however is inconvenient; and it seems that the record on which issue has been joined, ought to be attached to the record returned, either by means of a bill of exceptions or certificate from the court below, or otherwise, so as to make it part of the record returned.

ERROR to the District Court for the City and County of Philadelphia.

This was an action of debt brought in the District Court, to September term, 1839, in the name of the Commonwealth of Pennsyl-

(Crutcher *v*. The Commonwealth.)

vania, against Thomas E. Wilson, F. G. Crutcher and F. H. Morgan, upon a bail bond given by the defendants, in the sum of $9000.

The circumstances under which the case came before this court, were as follows.

To March term, 1839, of the District Court, Moses Wanzer and Jabez Harrison, trading under the firm of Wanzer & Harrison, brought an action on the case against Thomas E. Wilson. The suit was commenced by capias, returnable to the 1st Monday in April; and the bail required was $9000. On the 16th of March, 1839, the defendant Wilson with F. G. Crutcher and F. H. Morgan as his bail, entered into a bond to the commonwealth in the form required by the act of the 13th of June, 1836; the conditions being, that if the defendant should be condemned in the action, he should satisfy the condemnation money and costs, or surrender himself; or in default thereof, that the bail would do so for him.

The plaintiffs' attorney filed copies of the notes, upon which the suit was brought; and which were as follows:

"$3069 04.                    New York, January 20, 1837.

Twelve months after date, we promise to pay to the order of Wanzer & Harrison, three thousand and sixty-nine $\frac{04}{100}$ dollars, value received, payable at the counting-room of No. Douglass, Wood & Co., Nashville, Tenn.

(Signed) THOMAS E. WILSON."

"$1222$\frac{03}{100}$                    New York, January 27, 1837.

Twelve months after date, I promise to pay to the order of Wanzer & Harrison, twelve hundred twenty-two $\frac{03}{100}$ dollars, value received, payable at the counting-room of No. Douglass, Wood & Co., Nashville, Tenn.

(Signed) THOMAS E. WILSON."

On the 20th of April, 1839, judgment was entered for want of an affidavit of defence.

On the 1st of May, 1839, the damages were assessed by the pro-thonotary, according to a paper which was filed on the same day; and which was as follows:

"Note due 26th January, 1838.

| | | |
|---|---:|---:|
| $3069 04 | $3069 | 04 |
| Interest 26 January, 1838, to April 20, 1839, | | |
|     1 year 84 days, at 7 per cent., | 264 | 24 |
| Protest, | 4 | 51 |
| | 3337 | 79 |

(Crutcher *v.* The Commonwealth.)

Note due 27 January, 1838,                                    1222  03
    Interest from 27 January, 1838, to 20 April,
    1839, 1 year 82 days,                            104  96
    Protest,                        ·                   4  51 ·

                                               1331  50

                     $1331  50
                     3337  79

                     4669  29

Damages assessed as above.

                  ,   Pro. Pr. M. Coats."

The docket of this action contained the following entry :

" 1839, May 1.   Damages assessed at $1331 50."

On the 14th of May, 1839, F. G. Crutcher and F. H. Morgan entered into a recognisance in the usual form, in the sum of $2700, with the following condition, viz. " that if the defendant do not on or before the expiration of 12 months from the first Monday of April last, pay the amount of debt, interest and costs recovered against him in the case, we will pay the said amount for him."

A *capias ad satisfaciendum* was issued on this judgment, on the 23d of September, 1839, returnable to the first Monday in October following, endorsed, " Real debt $4669 29," with interest, &c.; to which a return of N. E. I. was made.

This action was then brought upon the bail bond. A return of *nihil habet* was made as to Wilson, the original defendant.

The declaration, after reciting the capias in the original action, the arrest of the defendant, and the bail bond, with the condition thereof, proceeded thus:

" And whereas, afterwards, to wit, at the March term of the said court in the year aforesaid, and after the return of the said writ, judgment was given in the said court for the said Moses Wanzer and Jabez Harrison, against the said Thomas E. Wilson in the action aforesaid ; and the said plaintiffs in the said action then and there by the consideration of the said court recovered in the said action against the said Thomas E. Wilson, four thousand six hundred and sixty-nine dollars and twenty-nine cents, which were adjudged to the said plaintiffs for their damages, which they had sustained as well on the occasion of the said Thomas E. Wilson not performing certain promises and undertakings then lately made by the said Thomas E. Wilson to the said plaintiffs, as for their costs and charges by them about their suit in that behalf expended ; whereof the said Thomas

(Crutcher *v.* The Commonwealth.)

E. Wilson is convicted, as by the record and proceedings thereof more fully appears. And the said commonwealth in fact say, that the said Thomas E. Wilson hath not yet satisfied the said condemnation money so as aforesaid adjudged to the said plaintiffs in the said action and costs, or any part thereof; and has not surrendered himself into the custody of the said sheriff, according to the form and effect of the said writing obligatory; and that the said F. G. Crutcher and F. H. Morgan have not done so for him; and that the said plaintiffs in the said action have not yet obtained any execution of the said judgment against the said Thomas E. Wilson, nor any execution upon the said writing obligatory; and further, that the said judgment so obtained against the said Thomas E. Wilson, still remains in full force and effect, not in any way reversed, vacated, paid off or satisfied; whereby and according to the form and effect of the said writing obligatory, an action hath accrued to the said commonwealth to demand and have of the said Thomas E. Wilson, F. G. Crutcher and F. H. Morgan, the said sum of nine thousand dollars in form aforesaid," &c.

The defendants, Crutcher and Morgan, filed a special plea, setting forth, " that after the making and delivery of the said bond or writing obligatory and condition, in the said plaintiff's declaration mentioned and set forth, and before the commencement of this suit, there was a judgment rendered in the suit of Moses Wanzer and Jabez Harrison, trading as Wanzer & Harrison, against Thomas E. Wilson, to wit, on the 20th day of April, A. D. 1839, for the sum of thirteen hundred and thirty-one dollars and fifty cents, in favour of the said plaintiffs in said suit, and so entered on the docket of the said District Court. And the defendants aver, that the said last mentioned suit, in which the said last mentioned judgment was so rendered, is the same suit in which the arrest of the said Thomas E. Wilson was made, as set forth in the plaintiff's declaration, and in which said suit the said bail bond in the plaintiff's declaration mentioned was given, by the said Thomas E. Wilson, F. G. Crutcher and F. H. Morgan; and that after the rendition of said judgment, and before the issuing of any *capias ad satisfaciendum,* or any other process on said judgment, and before the commencement of this suit, to wit, on the 14th day of May, A. D. 1839, F. G. Crutcher and F. H. Morgan, of No. 12 North Fourth street, Philadelphia, entered into a recognisance as bail for the stay of execution on said judgment, in the said District Court in and for the city and county of Philadelphia, before the prothonotary of the said court, in which they acknowledged themselves to be held in the sum of twenty-seven hundred dollars, upon condition that if Thomas E. Wilson, the defendant in the said suit, should not on or before the expiration of twelve months from the first Monday of April, then last past, pay the amount of debt, interest and cost recovered against him in the said suit, they would

(Crutcher *v.* The Commonwealth.)

pay the said amount for him. And the said F. G. Crutcher and F. H. Morgan were approved of as bail for the stay of execution in the said last mentioned case by a judge of the said District Court, in which court the said judgment was entered, according to the act of assembly in such case made and provided.

And this the defendants are ready to verify, wherefore they pray judgment if the said plaintiffs ought to have or maintain their aforesaid action against them," &c.

The plaintiff replied, " that after the making and delivery of the bond or writing obligatory, in the said plaintiff's declaration mentioned and set forth, and before the commencement of this suit, there was a ' judgment rendered in the said court in the suit of Moses Wanzer and Jabez Harrison, trading as Wanzer & Harrison, against Thomas E. Wilson, to wit, on the twentieth day of April, eighteen hundred and thirty-nine, for the sum of four thousand six hundred and sixty-nine dollars and twenty-nine cents, in favour of the said Wanzer & Harrison, without this, that after the making and delivery of the said bond or writing obligatory, and before the commencement of this suit, there was a judgment rendered in the said suit of Wanzer & Harrison against Thomas E. Wilson in favour of the plaintiff, for thirteen hundred and thirty-one dollars and fifty cents, in manner and form as the said defendants have above thereof in their said plea averred. And this the said plaintiff is ready to verify by the record of the said judgment, when, where, and in such manner as the court here shall direct and award," &c.

After argument, the District Court gave judgment for the plaintiff on the issue of *nul tiel record.*

Afterwards, viz., on the 21st of March, 1840, the District Court granted a rule to show cause why the prothonotary should not amend the docket entries of the assessment of damages by the assessment on file. On the 28th of March, 1840, this rule was made absolute.

This writ of error was issued.

The following error was assigned.

" The court erred in entering judgment in favour of the plaintiff upon the pleadings of this case."

Mr. *Mallery* for the plaintiff in error. '

The judgment in the original action appears only upon the docket, and there it is $1331 50, and the recognisance for the stay of execution is in double that sum. The act of assembly don't say in what amount security shall be given. It is impossible that the loose papers which are filed in the office can be considered a record. The act of the 29th of March, 1827, provides for keeping a judgment docket ;

(Crutcher *v.* The Commonwealth.)

which is to be the guide. The act of the 24th of February, 1806, §
28, specifies the duty of the prothonotary on the confession of judg-
ment. By the act of the 21st of March, 1772, the prothonotary is
to set down the day and year of entering judgment. Several other
acts and decisions recognise the docket entries as containing the
evidence of the judgment. Act of the 26th of March, 1827; act of
the 16th of April, 1840. *Black* v. *Dobson,* (11 *Serg. & Rawle,* 94.)
*Lewis* v. *Smith,* (2 *Serg. & Rawle,* 156.) In *Phillips* v. *Israel,* (10
*Serg. & Rawle,* 391,) it was held, that an entry by the plaintiff on
the docket, of " ended and debt and costs paid," is equivalent to an
entry of satisfaction, and may be pleaded in bar of a new suit for the
same cause of action. In *Brotherline* v. *Mallory,* (8 *Watts,* 136,)
Judge Huston says, " The docket entry of a judgment is a record."
In *Roup* v. *Waldhouer,* (12 *Serg. & Rawle,* 24,) it is held that the
entry of security for a stay of execution operates as a discharge of
a recognisance in nature of special bail on an appeal from a justice.
*Dornick* v. *Reichenbach,* (10 *Serg, & Rawle,* 24,) decides that the
verdict as entered on the docket is the only proper verdict, and that
the paper signed by the jury is not part of the record. The same
rule applies to a paper by which the prothonotary makes his assess-
ment of the damages.

A bill of exceptions in the case of a trial upon the issue of *nul tiel
record* is unknown in this state. *Patton* v. *Miller,* (13 *Serg. & Rawle,*
254.) *Helvete* v. *Rapp,* (7 *Serg. & Rawle,* 306.) *Turner* v. *Wad-
dington,* (3 *Wash. C. C. Rep.* 126.) *Sliver* v. *Shelback,* (1 *Dall.*
165.) *Moore* v. *McEwen,* (5 *Serg. & Rawle,* 373.)

Mr. *F. W. Hubbell* contra.

The error in pleading here was in the defendants, in not pleading
*nul tiel record.* We were obliged, for expedition, to traverse the
judgment as they averred it.

A bill of exceptions was necessary to bring the matter before the
court. *Fry* v. *Wells,* (4 *Yeates,* 497.) There the ground rested on,
was that oyer had been prayed, which is the course where the record
is of the same court. Whether record or not, is an issue of fact. If
the jury decide a fact wrong, you can't get at it, except by bill of
exceptions. So of a court deciding a matter of fact. The *U. S. v.
Cook,* (2 *Mason,* 22,) shows that *nul tiel record* is an issue of fact,
and that the record can't be noticed if it is not contained in the
record brought up in a bill of exceptions, or some other way. *Wat-
son* v. *Mercer,* (17 *Serg. & Rawle,* 343.)

As to the merits. The act of 1836, § 4, requires security for a
stay of execution to be given for the sum recovered, with interest
and costs. Now, if the security in this case was not given according
to the act, it was a nullity; and we were not bound to wait or move
the court. *Eichman* v. *Belvedere Bank,* (3 *Wharton,* 68.) So in
*Roup* v. *Waldhouer,* the court say that the plaintiff may treat the

recognisance as a nullity if irregularly entered. Then the question is, was this the judgment upon which the stay of execution was entered. It was a judgment certain without the assessment of damages. In *M'Clurg* v. *Murphy*, (*Dis. Ct. Dec. T.*, 1837, MS.) a judgment for want of an affidavit of defence, under the act of 1835, was held to be final. In *Brotherline* v. *Mallory*, Judge HUSTON says, that where the amount is mere matter of calculation, a writ of inquiry is not necessary. Here the defendants and their counsel were apprised of the plaintiff's demand and recovery; and this entry upon the docket was their own act, and at their own risk. Besides, the amendment made by the District Court is conclusive here. The record must be taken as we find it. *Prady* v. *Ordroneaux*, (6 *Serg. & Rawle*, 110.) *Hoffman* v. *Coster*, (2 *Wharton's Rep.* 468.) The docket is only a record for liens to give notice to third persons. The assessment of damages is in fact the act of the court made through their officer. Here there was no injury done to the defendant. He was remitted to his original liability. The defendants were not third persons, but were bound to see that the security was properly entered. If the defendant in the original suit who knew of the mistake—for he had confessed judgment—took advantage of it, is his bail discharged? If any injury accrued to them from the proceedings, they ought to have shown it. It is not enough to suggest that they may have been injured.

Mr. *Scott* in reply.

The assessment of damages is not a judgment. The act of 1827 makes the docket the proper entry of the judgment, and the only evidence of the acts of the court. The bail had a right to waive the surrender or part with securities. Bail are favoured by the law. As to the amendment, the whole record is to be taken together, and that shows that it was not always so. The court may amend so as to bind the parties, but not to affect the rights of third persons. Such is the case of *Kennedy* v. *Wachsmuth*, (12 *Serg. & Rawle*, 171.) Bail are third persons within the intendment of the law. The case of the *U. S.* v. *Cook*, was decided upon the judiciary act of 1789.

The opinion of the court was delivered by

ROGERS, J.—The firm of Wanzer & Harrison brought suit to recover the amount of two notes from Thomas E Wilson. Crutcher and Morgan, who, with Wilson, are the present defendants, became bail in the action, and entered into a bail bond to the commonwealth, in the sum of nine thousand dollars, on this condition; that if Wilson should be condemned in the action brought against him, he would satisfy the condemnation money and costs, or surrender himself into the custody of the sheriff; or that in default thereof, Crutcher and Morgan would do so for him. The suit against Wilson was brought

(Crutcher v. The Commonwealth.)

to the March Term, 1839, a copy of the notes was filed, and on the 20th of April, judgment was entered for want of an affidavit of defence. A reference was made to the prothonotary, in the usual manner, to assess damages; and on the 1st of May, 1839, the damages were assessed at the sum of $4669 50, as appears by a paper filed in the handwriting of the prothonotary of that date. On the same day this entry is made by him on the docket, " May 1, 1839, damages assessed at $1231 50." On the 14th of May, Crutcher and Morgan enter into a recognisance in open court as security for a stay of execution, in the sum of $2700, *sub. con.*, that if the defendant do not, &c. pay the amount of the debt, &c. recovered against him, they will pay the amount for him. This suit is brought upon the bail bond, against the principal and bail; and the plaintiff avers that Wanzer & Harrison, in the original suit, recovered from Wilson $4669 29, which were adjudged to them for their damages, &c., as for their costs and charges expended. The defendants, in substance, deny that there is any such record as it is set out in the declaration; and in support of this plea rely on the entry on the docket, which they aver to be the proper and only judgment rendered. They further contend that by the entry of security for the stay of execution, they are discharged from suit on the bail bond; and that the plaintiffs' remedy is on the recognisance of bail. And whether the docket entry, or the paper filed, is the judgment of the court, is the principal question. It cannot be doubted that in the various acts of assembly which have been cited at bar, particularly the acts of the 29th of March, 1827, 8th April 1833, and the 17th of June, 1839, (*Stroud's Purd.* 906, title Records,) the legislature recognises the docket as the proper and only place for the entry of the judgment. The third section of the act of the 29th of March, 1827, is very strong to this point; for in that section it is made the duty of the prothonotary of the several Courts of Common Pleas, District Courts, and Circuit Courts, to prepare dockets to be called the judgment dockets, in which the legislature directs shall be copied the entry of every judgment, and every award of arbitrators, immediately after the same shall have been entered. It then particularly prescribes the manner in which the entries shall be made. Even before this act, and certainly since, no doubt has rested in the mind of any person that the entries of the judgments must be then made; and it would be a dangerous innovation, most destructive to the rights of suitors, if any other practice should receive any countenance from the courts; that the solemn entries made in conformity to the express direction of the act, should be controlled or set aside by memorandums, made on loose scraps of paper, and filed as part of the proceedings.

The universal practice, throughout the commonwealth, has been to the contrary. Persons about to loan money on real security, or to purchase real estate, look only to the judgment as ascertained and entered on the docket. They never think it necessary for

their security to examine every paper filed, or other minute or memorandum on the record, to ascertain whether the prothonotary has mistaken the proper entry. If this were the case of a subsequent judgment creditor or mortgagee, it would not admit of argument that they could be affected only to the amount of the judgment, as it appears on the docket. And it is yet to be shown, that the defendants who are bail, and therefore favourites of the law, are in a worse situation in that respect, than subsequent judgment creditors, mortgagees or purchasers. This can only be done by showing that they are parties or privies to the original suit, in which they are bail. But that they are neither, is very clear, for they have none of the rights of privies or parties. They cannot interfere with the suit in any way, except in case of fraud, or when the defendants have absconded; when the courts may interpose to prevent injustice, or permit them to come in and take defence. But in an ordinary case, they have no day in court. They cannot subpœna witnesses, interfere with the trial, or in any way control the amount of the judgment, or the manner or place of the entry of the judgment. As to the judgment and the amount of it, and in every other respect, the parties themselves are the exclusive judges; they may and do act as seems right to themselves, by amicable agreement, or confession, and that in direct opposition to anything the bail may say or do. Any suggestion of theirs might be regarded an impertinent interference with the business of others, and foreign to their duty as bail. Nor have they any just right to complain of this, as they can at any time relieve themselves from responsibility, by a surrender of their principal. It is very probable that the entry here, was made by mistake; and the court on motion would and indeed have allowed the record to be amended, as there was something to amend by; but until it is amended, the judgment must be taken to be rendered for the sum entered on the docket. And this I apprehend would be the case even between the parties themselves; but be this as it may, as to third persons, nothing we think can be clearer. It is said to be hard that the plaintiff should suffer by the mistake of the prothonotary; but if he has been injured by that officer, he has his remedy. Likewise it must not be forgotten, that a different doctrine may operate with peculiar severity on the defendants. They may have had in their hands an indemnity to an amount equal to the sum recovered, as it appeared on the docket; and for this reason may have deemed it unnecessary to surrender their principal; or for many reasons they may have preferred to pay *that* amount, rather than surrender him, when they would have been unwilling to encounter a much larger responsibility. But the case further shows, that security was entered for a stay of execution; and according to the case of *Roup* v. *Waldhouer*, (12 *Serg. & Rawle*, 24,) the bail are discharged. In that case it is decided, that the entry of security to allow a stay of execution, operates as a discharge of a recognisance

in the nature of special bail. But the action proceeds on the notion that the recognisance of bail is a nullity, because it is given in a less sum than the amount of the judgment. But in this assumption the plaintiff is mistaken, as has been already proved. But to subject the defendants to this suit, it is necessary to show that the *bail* were at liberty to treat the entry on record, the recognisance taken in open court on notice to the plaintiff, as a nullity; and that notwithstanding these proceedings, they have the right to surrender their principal. The affirmative of this proposition it will be difficult to maintain. It is nothing that in this case the absolute or special bail are the same persons, as it is not alleged that they knew, and they are not bound to know, that a mistake had occurred in the entry of judgment. In that respect they are in the same situation with strangers, and are bound, as all others are, to look to the docket, and no further, to ascertain the amount due; and for aught that appears they fairly and honestly entered the security by which their relation was changed from special to absolute bail, for the amount of the judgment rendered. As they could not surrender their principal, as it is very clear they could not, they are discharged from their first responsibility. They have omitted nothing which the law exacts from them; and without some default, it is not in the power of the parties by their mistakes, nor of the court to suspend their right for an instant, without discharging them altogether. Hence as the record stood, some time elapsed when they were unable to discharge themselves by a surrender of their principal, without his consent, and the consent of the plaintiffs in the original action. Both had an interest which they might be unwilling to submit to the control of the defendants: the principal might object to a claim of any right of surrender of his person, until the expiration of the stay of execution; and on the other hand, the plaintiffs had a right to insist on their recognisance not being in any way impaired, as the latter was a much better security than the former, one being special bail, the other absolute security for the amount of the judgment on the docket. If the argument of the plaintiffs hold good, a mistake to the value of one cent in the entry of judgment on the docket, will vitiate the recognisance, and discharge the recognisor. The plaintiffs would in that case lose their debt, and the defendant would, as before, be exposed to imprisonment, at the option of his bail or the plaintiffs. I cannot consider the recognisance void, but whilst the record stands unamended, it binds the recognisor, and of course is a bar to any suit against the special bail.

Since the trial, and after writ of error, the District Court has amended the record. We do not doubt their power to do so, as between the parties themselves, but it cannot be seriously urged that the court can allow an amendment to affect the rights of a subsequent judgment creditor, a mortgagee, or a purchaser; nor can this be done against the bail to the action, who are neither parties nor

privies to the original suit. In *Black* v. *Dobson,* (11 *Serg. & Rawle,* 97,) the doctrine is expressly asserted that the court cannot by amendment deprive subsequent judgment creditors or mortgagees of any legal advantage which they may have obtained. · This principle is so obviously just, as hardly to need the aid of authority.

It has been suggested in the argument, that a writ of error will not lie to the judgment of the court on a plea of *nul tiel record ;* and for this position the counsel rely on the case of *The United States* in error v. *Cook,* in which this point is expressly decided. But a contrary practice has obtained without objection in this state, and to such as extent as the cases cited show, that it is· not now an open question. It is too late to doubt the power of the court to review in such cases the decisions of inferior tribunals. On issues of *nul tiel record,* points are frequently involved of the greatest nicety and difficulty, on which the right to property of great amount may depend. It has been the policy of this state to give every facility to the settlement of such questions in the court of the highest resort; and it would answer no beneficial purpose now to retrace our steps, merely for the purposes of harmony with our sister ·states. But it is insisted that although a writ of error may be taken to such judgment, we have here no judicial knowledge of the identity of the record, on which the parties went to issue, and that the proper course was to put it on the record by bill of exceptions, or to make it part of the proceeding by craving oyer, or by consent. The case in 4 *Yeates,* 497, was the exemplification of a record of a foreign state, which was adjudged by the Common Pleas incompetent testimony of a foreign judgment, on the plea of *nul tiel record.* The decision of the court on this point was reversed by the Supreme Court; and on the argument, the counsel on both sides considered the exemplification accompanying the record as the identical paper offered in evidence to the court below. After the decision of the court overruling the opinion of the Common Pleas, the defendant's counsel objected to the Supreme Court taking any notice of the paper alleged to be the exemplification of the Connecticut judgment, the same not being certified by a bill of exceptions or any agreement of counsel. After taking time to advise, the Chief Justice delivered the opinion of the court, that having theretofore determined that the exemplification of the judgment in Connecticut was good and legal evidence, the judgment of the Court of Common Pleas was reversed, and the record remitted thither for further proceedings thereon. No reason was assigned by the court, and the only written opinion is by Judge BRECKENRIDGE, who enters very fully into the point, the result of which is, that a paper could not be known judicially, but as coming up under a bill of exceptions or tacked to the record on a profert, to the plea, after oyer, or to the replication, before issue joined; that it must appear to be the identical paper that was overruled, by other evidence than what is dehors the record. But the

(Crutcher *v.* The Commonwealth.)

majority of the court do not concur with these views, but decided that a bill of exceptions was not required, and that evidence short of record evidence would suffice to identify the paper.

In Pennsylvania the bill of exceptions in such cases is unknown. The record is brought into court on a day given, as was done here, and the trial is on the record. When the cause is removed by writ of error, the record is certified by the court without bill of exceptions, or making the record brought into court for inspection a formal part of the proceeding. It must be admitted that the practice on this head is not in strict accordance with the practice of other tribunals, 2 *Mason,* 22; and most probably the error in the practice took its rise from the case of *Fry* v. *Executors of Harvey,* (4 *Yeates,*) on which the defendant in error relies. The court in the commencement of the case was impressed with the difficulty of considering what was not formally attached as part of the record, and proposed sending the cause back to the District Court, that it might be tacked to the record by a certificate from the court. But this course the counsel for the defendants very properly rendered unnecessary by producing an exemplification of the record, and consenting that it should be considered a part of the proceedings. After this, we have as satisfactory proof of the identity of the paper, as was conceived sufficient in *'Fry* v. *Harvey,* to warrant the court in rendering judgment.

To avoid difficulty hereafter, it would be well for the profession to attend to having the record on which issue is joined, attached to and made part of the record returned, either by bill of exceptions, or in some other mode, by consent or otherwise.

Judgment reversed; and judgment for the defendants.