## Mellon's Appeal.

1. A release of a property mortgaged from the lien of a judgment cannot be set up against one who in good faith purchased the judgment without notice, actual or constructive, to put him on inquiry as to the release.

2. A judgment was revived by an amicable scire facias. No note of the revival was made on the record of the original judgment. The amicable scire facias was, however, accompanied by a confession of judgment, which judgment confessed was at once entered upon the judgment-docket: _Held_, that this was constructive notice to all lien-creditors of the existence of such judgment and cured the omission to note the amicable scire facias in its proper place.

October 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Appeal from the Orphans' Court of _Allegheny county_: Of October and November Term 1878, No. 168.

Appeal of Thomas Mellon from the decree of the court in the distribution of the proceeds of the sale of the real estate of Conrad Schad, deceased.

The material facts will be found stated in the opinion of this court.

_T. Mellon_, for appellant.

_J. I. Mitchell_, for appellee

Mr. Justice PAXSON delivered the opinion of the court, November 3d 1879.

This was a question of priority of lien, and arose upon the distribution of the proceeds of the sale of the real estate of Conrad Schad, deceased. On the 26th of February 1868 William Hageman obtained a judgment against the said Schad, No. 280, April Term 1868. On the 12th of September of the same year Hageman assigned the judgment to J. D. Harlet, who, on the 11th of June 1870, assigned it to J. I. Mitchell, who, on February 6th 1874, assigned it to D. Lutz, the appellee.

[Mellon's Appeal.]

On July 7th 1868, Schad executed and delivered to Thomas Mellon, the appellant, a mortgage of $7000 upon a portion of the real estate bound by the judgment, and with the mortgage delivered to said Mellon a release of the property mortgaged from the lien of said judgment, duly executed by Hageman, the judgment-creditor. This release was not recorded, nor was it noted on the judgment docket until May 29th 1877.

On April 6th 1873, Mellon obtained a judgment against Schad, No. 389, September term 1873, for the sum of $2116.60. This judgment was for interest due on the mortgage and as collateral to said mortgage. There was no new consideration.

On December 21st 1871, the Hageman judgment was revived by the parties thereto by an amicable scire facias, No. 178, of January term 1872. No note or memorandum of this amicable revival was made on the record of the original judgment until January 21st 1878, when the omission was discovered and the usual reference made. We learn, however, from the record that the amicable scire facias was accompanied by a confession of judgment, which judgment so confessed was entered on the judgment docket the day the agreement to revive was filed.

The assignee of the Hageman judgment does not appear to have had any notice or knowledge of the release held by Mr. Mellon. On the other hand Mellon had not actual notice of the amicable scire facias.

The court below held that the release was inoperative as to the assignee of the judgment in the absence of notice; that the judgment was properly revived both as to the defendant therein and Mellon, the holder of the mortgage, and awarded the money to Lutz, the assignee of said judgment. From this decree the said Thomas Mellon entered this appeal.

The court below was right in holding that the release could not be set up against Lutz, who in good faith had purchased the judgment without notice actual or constructive, and who was therefore an innocent holder. He bought upon the faith of the record with nothing to put him upon inquiry as to the release. Mellon did not procure his release to be noted on the record of the judgment until nearly nine years after he had received it. Had he entered it at once as he might and ought to have done, Lutz would not have been misled. By withholding it from the record he put in the power of Hageman to practice a deception. It was said by GIBSON, C. J., in Fisher v. Knox, 1 Harris 622, that "any one who leaves it in the power of another to deceive may be said to collude with him beforehand." In that case this court postponed the assignee of the moiety of a judgment who had not caused his interest to be noted on the docket, in favor of a subsequent assignee without notice of the prior assignment, and who had procured his assignment to be marked on the record. In Wetherill's Appeal, 3 Grant

281, it was held that laches in the holder of a secret equity will postpone him. Says Mr. Justice STRONG: "It may be said that all the authorities agree that the presence of laches in the holder of a secret equity will postpone him; even an equity in the obligor may be lost by neglect to assert its existence, and *a fortiori* will a third person lose his right by any laches which causes an injury to a purchaser of a chose in action."

Was the judgment properly revived as against Mellon?

The Act of 29th March 1827, Purd. Dig. 822, 9 Sm. 319, expressly requires that "when any judgment shall be revived by scire facias or otherwise, or when any execution shall issue in any case, a note thereof shall be made in the proper judgment docket in the place where the other entries in the case may have been made." This act does not appear to have been strictly observed in some portions of the state for some years after its passage. This laxity led to the passage of the Act of 3d April 1843, Pamph. L. 127, Purd. Dig. 823, which was evidently intended to validate judgments prior to the date of said last-recited act, which had not been entered in the judgment docket as required by the prior Act of 1827: Mehaffy's Appeal, 7 W. & S. 200. But the Act of 1843 contains this express proviso: "That nothing contained in this act shall hereafter release prothonotaries or other proper officers of the courts of this Commonwealth from keeping a judgment or lien docket according to the requirements and provisions of the Act of 29th of March 1827 aforesaid." It thus appears that the keeping of a judgment docket in which all judgments shall be entered, and all sci. fa.'s to revive shall be noted, is a plain and imperative requirement of the Act of 1827. This docket was intended as record notice of existing liens of judgments and awards of arbitrators: Crutcher v. Commonwealth, 6 Whart. 340; Mann's Appeal, 1 Barr 24; Ridgway's Appeal, 3 Harris 177. It is the only docket to be examined with this view: Stephens's Executors' Appeal, 2 Wright 9; Bear v. Patterson, 3 W. & S. 233; Wood v. Reynolds, 7 Id. 406. Yet it is not the only notice. It has been frequently held that actual notice of liens independently of the docket is sufficient: Speer v. Evans, 11 Wright 141; The York Bank's Appeal, 12 Casey 458. Just here it is important to observe the distinction between the purpose of the Act of 29th March 1827, relating to the judgment docket, and the Act of 4th April 1798, 3 Sm. 331; Purd. Dig. 819, pl. 3, relating to the lien of judgments. The former act, as before remarked, was intended to supply record notice of liens by judgment. The Act of 1798 had another and entirely different object. It was an act of limitation. Prior to its passage a judgment was a perpetual lien upon real estate. The mischief was that conveyances of real property were seriously impeded, titles were rendered insecure, and the sheriffs of the different counties of the state were sometimes unable for a long time to distribute the

proceeds of the sales of real estate by reason of the existence of old judgments upon the records, many of which were actually paid, but left unsatisfied upon the docket, and the plaintiffs either dead or moved out of the jurisdiction. It was to remedy these evils that the Act of 1798 was passed. It was held as long ago as Bank of North America *v.* Fitzsimmons, 3 Binney 342, that it was an act of limitation, and that " a judgment not revived by scire facias within five years from its date, ceases to be a lien upon real estate as well as against subsequent judgment creditors as against subsequent purchasers." The result is that when a judgment is not revived according to law it drops out of the list of liens, and the next encumbrance in point of time takes its place : Bank *v.* Crevor, 2 Rawle 224 ; Fryhoffer *v.* Busby, 17 S. & R. 241.

The failure to note the amicable scire facias on the docket entry of the original judgment would be fatal as against Mellon unless he had notice actual or constructive of the revival. I do not think it enough that he had knowledge of the original judgment. Such knowledge is to be presumed as to all subsequent lien-creditors. The record furnishes them with constructive notice. Having such notice, it may be said in one sense that the junior lien-creditor is not injured by the failure of notice of revival. But this is the evil which the Act of 1798 was intended to remedy. Said act comes in not by way of notice but by way of limitation, and says that the lien shall cease unless the judgment is revived within five years, while the Act of 1827 requires it to be revived in such a way that the holders of subsequent liens shall have record notice of the revival. Both the lien and its continuance are creatures of statute. The revival being a statutory proceeding, and out of the course of the common law, the statute must be substantially complied with to preserve the lien as to purchasers and lien-creditors.

The object of the Act of 1827 in requiring the scire facias to be noted on the record of the original judgment was to give convenient notice to purchasers and lien-creditors of the revival. By an examination of the record of the original judgment a person interested could see at a glance whether a scire facias had been issued. If no such note appears upon the docket and five years have elapsed since the judgment was entered, a subsequent purchaser or lien-creditor has the right to presume the lien has expired, and is not bound to look further. But as the very purpose is to furnish such notice, it must be apparent that if he has it from any other source he is not injured by the failure to note the revival.

That Mr. Mellon had actual notice is not pretended. But the record shows he had that which was its precise equivalent. The judgment confessed upon the scire facias was entered at once upon the judgment docket. This was constructive notice to Mellon and all other lien-creditors of the existence of such judgment, and

[Mellon's Appeal.]

cures the omission to properly note the amicable scire facias in its proper place.

The decree is affirmed and the appeal dismissed, at the cost of the appellant.