## Bear *against* Patterson.

In the appropriation of the proceeds of the sale of real estate, the amount of a judgment shall be ascertained from the "Lien or judgment" docket; and if this amount differs, being less than the amount for which judgment was actually rendered and entered upon the appearance or continuance docket, the amount for which the judgment is entered in the "Lien docket" will limit the claim of the party.

*Primâ facie* all the obligors in a bond are principals, and must be treated as such in the appropriation of the proceeds of a sheriff's sale, until it is made to appear otherwise by positive proof.

ERROR to the Common Pleas of *Dauphin* county.

Samuel Patterson and William Patterson, administrators of Arthur Patterson, deceased, against H. K. Bear.

This was a feigned issue, directed by the court to try the right to the money arising from the sale of the real estate of John Gamber. The only question in the cause was, whether the plaintiffs were entitled to the money, and if so, how much?

They gave in evidence a judgment of Frederick Watts, Esq., against John Gamber, co-obligor in two bonds with Arthur Patterson, deceased, for $1000, with interest, amounting at the time of the sheriff's sale to $1472.86. This judgment was entered on the 22d of January 1838. In entering this judgment in the "lien docket," it was erroneously entered as for $1000, without interest, and as of the 22d of January 1837. On the 4th of May 1838, the administrators of Arthur Patterson, deceased, paid the amount of the judgment, and the plaintiff's attorney assigned the judgment to them on the docket. It also appeared upon the trial that in fact the plaintiffs were executors and not administrators of Arthur Patterson, deceased.

The counsel of subsequent judgment creditors asked the court to instruct the jury upon the following points:

1. That the plaintiffs in this feigned issue, Samuel Patterson and William Patterson, who are set forth as the administrators of Arthur Patterson, deceased, but who in fact are not such administrators, but the executors of said Arthur, as is admitted on this trial, are not entitled to recover in this issue, and that the verdict of the jury must be against their claim.

2. That if the jury believe the amount of the judgment, No. 34, November term 1837, was paid to the plaintiffs' attorney, by the legal representatives of Arthur Patterson, a co-obligor with John Gamber in the two bonds on which said suit is founded, the said judgment was thereby so satisfied, that it is not competent

[Bear v. Patterson.]

for the present plaintiffs to set it up to the prejudice of third persons, creditors of John Gamber; and in the event of their so believing, their verdict must be against the plaintiffs' claim.

3. That if they believe the amount of said judgment was paid by the legal representatives of Arthur Patterson, deceased, out of his estate, and that he was a co-obligor with John Gamber in the two bonds on which the suit is founded, the plaintiffs cannot recover anything in this suit; but certainly not more than *half* the amount of said judgment, on the day they paid it, with interest on that *half* to this time.

4. That there is no such proper and legal judgment entered in said suit, either on the lien, judgment or appearance docket, as will entitle the plaintiffs in this suit to set it up to the prejudice of John Gamber's creditors, now in court claiming the fund, and therefore that their verdict must be against the plaintiffs' claim.

The court below answered all the defendant's points in the negative.

*Harris*, for plaintiff in error, argued that there was no judgment for a specific sum. The Act of the 29th March 1827, provides a place to which resort is to be had to ascertain what liens exist against real estate; this is the only place to which a purchaser or subsequent creditor is bound to look. By a reference there to the judgment under which the plaintiffs claim, it is found to be for $1000, and entered 22d January 1837, whereas the judgment in fact was not obtained until 22d January 1838; it is clear, therefore, that the plaintiffs are only entitled to the amount which appears upon the "lien docket." But are they entitled to this? *Primâ facie* all defendants in the same judgment are principals; and if a different relation exists between them, it is the subject of proof. None such was given. The plaintiffs, therefore, were only entitled to the one-half of the amount of the judgment which was shown by the "lien docket."

*Herman Alricks, contra.* The docket where judgments are always entered, and which is always resorted to for information as to the amount, exhibited a regular judgment for the plaintiff for $1000, with interest, according to the plaintiff's statement. In noting that judgment in the "lien docket," no notice is taken of the interest. Where there is abundant record notice of the true amount of the judgment, is the party plaintiff to be prejudiced by the irregular practice of the officer? It will be an exceedingly bad principle to establish, that the regular entry of the judgment with all the forms and ceremonies which the law requires, and sometimes with conditions annexed to them, both as to their amount and the extent of their lien, is to be entirely disregarded, and the short entry in the "lien docket," which seems only to have been originally intended as a mere orderly exhibit of judg-

[Bear v. Patterson.]

ments as to the time when they were obtained, is to control the whole subject and govern the rights of lien creditors. The evil which the legislature intended to remedy by the Act of 1827, was one which arose out of the fact of judgments being sometimes obtained upon suits of so long standing, that parties interested would not search so far back for the existence of liens; and sometimes judgments were obtained against plaintiffs which were not easily found: it was proper, therefore, to require an additional entry to aid in discovering and giving notice of liens; but certainly it was not intended to supersede the judgment itself.

The judgment was assigned to the present plaintiffs two years before the subsequent judgments were entered. What right have these creditors to inquire into the validity of that assignment in this collateral way?

The opinion of the Court was delivered by

KENNEDY, J.—This was a feigned issue, directed by the Court of Common Pleas of Dauphin county, to be formed and tried, for the purpose of determining the rights of the several judgment creditors of John Gamber, to the money arising from a judicial sale of his real estate. The defendants in error, who were the plaintiffs below, although named as administrators of Arthur Patterson on the record, are in reality the executors, as would seem to have been admitted on the trial. This, however, notwithstanding some question was attempted to be made in regard to it, is quite an immaterial circumstance; for whether they be the one or the other, their right to receive the money is the same. There are then only two remaining questions to be decided. The first is, whether the defendants in error, having paid, as executors of Arthur Patterson, their testator the amount of the judgment in favour of Frederick Watts, Esq., against Gamber, given for the amount of two single bills, in which Gamber was bound jointly and severally as a co-obligor with Arthur Patterson, the testator of the defendants in error, are entitled to substitution for the sum so paid by them, or any part thereof. The second question is, if they be entitled to substitution, and thereby gain a preference over the other judgment creditors of Gamber, whether they shall be restricted to $1000, with interest thereon from the 22d day of January 1837, which is the amount of the judgment as entered on a docket in the prothonotary's office, called the "lien or judgment docket," or be entitled to receive $1472.86, according to the amount of the judgment as entered upon the continuance docket; and found by the jury, under the direction of the court, to be the sum that the defendants are entitled to receive. As to the first question, it is alleged that Arthur Patterson was the surety of Gamber, in the two single bills, upon which the judgment was obtained; and that the amount of the judgment having been paid by the defendants out of the assets belonging to the estate of Arthur Patterson, they are

therefore entitled to be subrogated to the rights of the plaintiff, in the judgment, for the whole amount of it.  But it does not appear from the record, that Patterson was merely the surety of Gamber in the bills; for aught, therefore, that we know, he may have been the principal debtor, and Gamber his surety, or they may have been equally interested in, and alike benefited by the debt; and if the first, no right of subrogation, on the part of the defendants in error, can even be pretended to exist; or if the latter be the case, it could not be claimed with the least colour of equity for more than one-half of the amount of the judgment.  If, however, the fact be, that Patterson was the surety only of Gamber in the bonds, it is most probable, that it was so well known to those who were concerned in the trial of the issue, in the court below, that no question was made about it, and, therefore, no mention of the fact is made on the record.  Indeed, it is highly improbable, that a finding in favour of the defendants in error, could have taken place for the whole amount of the judgment, upon any other principle than that of their testator having been the surety of Gamber merely.  It will, therefore, be sufficient for us to give our opinion upon this aspect of the case, without passing upon the right of co-obligors to subrogation, who are alike debtors as between themselves.   Should it appear, when the case is again brought before the court below for determination, that the testator of the defendants in error was merely the surety of Gamber in the bonds, and that they paid the amount of the judgment before any other creditor of Gamber acquired a lien upon the fund in court, they will be entitled to be subrogated, and thus preferred to the other creditors; but to what amount depends upon the solution of the second question.

Then, in regard to this second question, we think that the defendants in error cannot, consistently with the meaning of the Act of Assembly upon the subject, claim to be subrogated to more than the amount of the judgment as stated in the lien or judgment docket, which is perhaps $150 or $160 less than the true amount, as it appears on the continuance docket.   The third section of the Act of Assembly of the 29th of March 1827, makes it the duty of each of the prothonotaries of the several courts of common pleas, district courts, &c., in the state, to prepare and keep a docket, to be called the judgment docket, in which no case shall be entered until after there shall have been judgment, or award of arbitrators in such case, and into which shall be copied the entry of every judgment, and every award of arbitrators, *immediately* after the same shall have been entered; which entries, so to be made in the said judgment docket, shall be so made that one shall follow the other in the order of time in which the said judgments and awards shall have been rendered, entered, or filed as aforesaid; and the entries, in each case in said judgment docket, shall particularly state and set forth the names of the parties, the term and number

[Bear v. Patterson.]

.of the case, and the date, and in case the judgment shall be for a sum certain, the *amount* of the judgment or award; and when any judgment shall be revived by *scire facias* or otherwise, or when any execution shall issue in any case, a note thereof shall be made in the proper judgment docket, at the place where the other entries in such case may have been made; and whenever any transcript of any *testatum* execution, or any transcript showing the balance appearing to be due, from any executor, administrator or guardian, or from any collector of any.township, ward or district, shall be delivered to any of the said prothonotaries, the docket entries made in such case shall be copied into the said judgment docket, in like manner as judgments and awards are herein directed to be copied; and the fee for all the entries made in each case, in the judgment docket, shall be 12½ cents, and no more." Now, it is manifest, from the language of this section, as also the various provisions contained in it, that the great object of having a judgment docket kept in every prothonotary's office, in which each judgment should be entered *as soon as rendered*, or *entered*, with the amount thereof, if for a sum certain, was to promote the facility and *certainty* of ascertaining afterwards the amount of the same; so that the prothonotary, or any other person having a right to inspect the records and dockets of the court, should be enabled, by referring to it, to ascertain the amount of any particular judgment that existed, together with everything connected with it, which is required to be entered therein. It may be a matter of interest to subsequent lien creditors of the defendant in the judgment, as well as purchasers of the real estate bound by it, to know the amount of the judgments previously entered; and in order that they might obtain this knowledge, with readiness and certainty, the judgment docket was required to be kept in the office, to which reference might be had for that purpose without looking further. If, then, the judgment be rendered or entered, for a sum certain, it is sufficient to refer to the judgment docket, in order to ascertain the amount, and the amount entered there shall be taken to be the true amount as against subsequent purchasers or lien creditors, whose interests would be prejudiced by enlarging it, though it were only to correct an error of the clerk or prothonotary, committed in transcribing it from the appearance or continuance docket, wherein it was first entered. If the prior lien creditor shall sustain a loss in such case, by reason of the negligence or mistake of the prothonotary, the latter must be responsible for it, and make it good. If, therefore, it shall appear to the court below, upon a second hearing of this case, that Arthur Patterson was merely a surety in the bonds for Gamber, the defendants will have a right to be subrogated to the rights of Mr. Watts, the plaintiff in the judgment, to the amount thereof, as it is entered in the judgment docket; that is, for $1000, with interest thereon from the 22d of January 1837, to the return of the writ under

[Bear v. Patterson.]

which the money was made. The court below erred in this particular, by not instructing the jury to confine themselves to this last sum. The judgment is therefore reversed, and a *venire de novo* awarded.

Judgment reversed, and a *venire de novo* awarded.