## MANN'S APPEAL.

Where a judgment is obtained and entered upon the appearance docket, but not entered upon the judgment docket, and subsequent judgments are regularly entered upon the judgment docket, on the sale of the land by the sheriff under judicial process upon one of the subsequent judgments, the only evidence of judgment liens which the sheriff is bound to regard, in the absence of all other evidence being produced or given to him, is the judgment docket.

And where, in such case, the *first* of the subsequent judgment creditors becomes the purchaser at the sheriff's sale, the judgment docket being plenary, and the only evidence he is bound to look to of his judgment being the *first* lien upon the land; if the amount of the purchase money is not equal to his own judgment, and it is applied by the sheriff to the discharge of his judgment *pro tanto*, and the sale perfected without objection to such application of the money from any quarter; the plaintiff, in the judgment not entered upon the judgment docket, may look to the prothonotary for redress of the loss he may have sustained by the prothonotary's neglect to enter his judgment on the judgment docket.

THIS was an appeal by Job Mann, from a decree of the Court of Common Pleas of Bedford county, in the matter of the appropriation of the money produced by a sale of the real estate of George Loose, made by the sheriff by virtue of judicial process sued out of the court aforesaid.

The following exceptions were filed:

1. The court erred in making the rule to show cause absolute, and in directing the money made by the sheriff to be applied, first, to the satisfaction of the judgment of Swope and King, and the balance to the judgment of A. W. Kinney for the use of Job Mann.

2. The judgment of A. W. Kinney for the use of Job Mann, was entitled to the money.

The questions involved in this case, the material facts of which are fully stated in the opinion of the court, were argued by

*Briggs*, for the appellant, who contended that Swope and King, the appellees, were not entitled to the money, (which, by way of accommodation, was considered in court,) or any part of it:

1. Because, their judgment of revival was not transferred, or entered upon the judgment docket.

2. Because the sheriff had appropriated the money arising from the sale of the real estate of George Loose, to the judgment of A. W. Kinney for the use of Job Mann, according to the liens on the judgment docket, as certified to by the prothonotary, and he was not bound to look for judgments to any other docket.

The act of the 29th of March, 1827, section 3, Purdon's Digest, 907, makes it the duty of the prothonotaries of the several courts of

Common Pleas, &c., of this commonwealth, to make, prepare, and keep a judgment docket, into which, all judgments and awards of arbitrators are directed to be copied immediately after the same shall have been entered; and when any judgment shall be revived by scire facias, or otherwise, a note thereof shall be made in the proper judgment docket, &c.

That the original judgment of Swope and King, the appellees, had been entered on the judgment docket more than seven years previously to the sale by the sheriff of the real estate of George Loose, and that a note of the judgment of revival, upon their scire facias to April term, 1840, entered on the continuance or appearance docket, on the 22d day of August, 1842, had not been made on the proper judgment docket according to the directions of the act of Assembly.

Mr. Mann stands before this court in the situation of a bonâ fide purchaser, without any notice whatever of the claim or judgment of the appellees. In Crutcher v. Commonwealth, 6 Wharton, 340; Bear v. Patterson, 3 Watts & Sergeant, 233, and in Mehaffy's Appeal, 7 Watts & Serg. 200, it is held, that where there is a discrepancy in the entry upon the *continuance* docket and the judgment docket, the amount must be ascertained from the judgment docket. Now, if the judgment docket is to be the guide in a dispute between third persons, when a partial entry has been made in it, with how much greater force does this appeal come to this court when no entry at all has been made in it.

In Wood v. Reynolds, 7 Watts & Serg. 406, it is held to be the duty of a party to see that his judgment is correctly entered.

Again, whenever a party receives money which, in equity and good conscience, he was entitled to receive, he cannot be compelled to refund or pay it back. Espy v. Allison, 9 Watts, 462.

In this case Mr. Mann certainly had an equitable and conscientious right to receive this money.

The reporter regrets that he has no note of the able argument of *King* for appellees.

The opinion of the court was delivered by KENNEDY, J.

The first judgment, in point of time, which had become a lien upon the real estate of George Loose, sold by the sheriff, was originally obtained before a justice of the peace, in favour of Swope and McKirnan, for the use of Peter Swope, John King & Co., which was entered on the continuance docket of the Court of Common Pleas of

said county, by the prothonotary, on the 19th of February, 1835, from a transcript thereof, given by the justice of the peace, and was revived afterwards by a writ of scire facias sued out for that purpose, on the 29th of January, 1840, and a judgment of revival entered therein on the 22d of August, 1842, for one hundred and twelve dollars and twenty-two cents, besides costs of suit. This judgment of revival was entered on the continuance or appearance docket, but the entry thereof was never copied into the judgment docket, as directed by the 3d section of the act of the 29th of March, 1827, Pamph. Laws, p. 154, which not only directs that the entry of every judgment and every award of arbitrators shall, immediately after being made in the appearance or continuance docket, be copied in the judgment docket, and when any judgment shall be revived by scire facias or otherwise, a note thereof shall be made in the proper judgment docket, at the place where the other entries in such case may have been made.

The next judgment in order of time which bound the real estate sold, was in favour of A. W. Kinney & Co., for the use of Job Mann, the appellant, entered originally of January term, 1838, and revived by amicable scire facias on the 19th of May, 1841, for the sum of $172 90 debt, with interest from the 16th of April, 1841, besides costs of suit. The original judgment in this case was entered on the continuance docket on the 16th of April, 1838, and the entry thereof copied immediately into the judgment docket. The judgment of revival was entered or noted in the judgment docket on the 19th of May, 1841, at the place where the other entries of the case had been made. There were several other judgments against George Loose, in favour of different persons for various sums of money entered upon the continuance docket, and the entries thereof regularly copied into the judgment docket, which bound the land sold, but all of subsequent dates to Mr. Mann's. Upon one of these subsequent judgments, judicial process was sued out, by virtue whereof, the land sold was seized, and by a production of a transcript from the prothonotary of the judgments noted on the judgment docket alone, in which the judgment in favour of Swope & McKirnan, for the use of Peter Swope, John King & Co., did not appear of course, as it was not noted in that docket within five years previously thereto, was condemned to sale; the rents, issues, and profits of the land being found by an inquest not to be of sufficient annual value beyond all reprises, to pay the amount of the lien judgments so produced, within the space of seven years: and subsequently, by virtue of a writ of venditioni exponas issued to April term of said court, directed to the sheriff, was duly sold on the

17th day of March, 1843, to Job Mann, the appellant, for the price of $165. On the 27th of April, 1827, without its appearing that either the sheriff, or Mr. Mann, the purchaser, had any notice whatever of the judgment of Swope & McKirnan for the use of Peter Swope, John King & Co. against George Loose, or its being a lien upon the land at the time of the sale thereof, the purchase money was settled and paid by the sheriff, after deducting the costs therefrom, to Mr. Mann, by his taking a receipt therefor from Mr. Mann, who appeared on the judgment docket, and was in fact, as it would seem, believed to have the earliest existing lien on the land, at the time of sale, and by giving to him a receipt in full for the amount of the purchase money, as also a deed, upon receiving the costs accrued on Mr. Mann's judgment and the sale, duly executed and acknowledged in open court, consummating and perfecting the sale. Thus the matter rested, without any objection being made to this appropriation of the purchase money by the sheriff, or notice being given to him, that it was claimed by the appellees, either before or after the appropriation, until December, 1843, some eight months afterwards or more, when an application was made to the court below by the executors of John King, who had died in the mean time, for a rule on Mr. Mann to show cause why the proceeds of the sale of the land sold to him by the sheriff, or so much thereof as should be necessary to satisfy the judgment in favour of Swope & McKirnan, for the use of Peter Swope, John King & Co., should not be applied to the payment of it. On the 7th of January, 1844, the court made this rule absolute, and directed that the money in the hands of the sheriff, (who had none either in fact or in contemplation of law in his hands,) be first applied to the satisfaction of this latter judgment, and the residue to Mr. Mann's judgment. From this decree or order of the court Mr. Mann has appealed. A certified list, given by the prothonotary, of the judgments that were considered liens by him on the land of George Loose, was produced to the inquest at the time of its condemnation, leaving out the judgment of Swope, King & Co. altogether, which list the sheriff preserved and annexed to the inquisition, making it part of his return to the court, showing the execution of the fieri facias under which he made the seizure. Then, even admitting that the judgment of the appellees was a lien upon the land at the time of the sale, there is every reason that could well exist to believe that the sheriff, as also Mr. Mann, knew nothing of it; because it was not noted or entered in the judgment docket, as it ought to have been, according to the express direction of the act of assembly already referred to. It may have been the neglect of the

prothonotary that it was not so entered, and if it was, it was certainly the business of the appellees to see to it and have it put right in time, and not that of the sheriff, or Mr. Mann, or any other, that might have become the purchaser of the land. They, therefore, may very properly be said by their neglect to have withheld from the purchaser, as well as the sheriff, that notice which the law seems to require in such cases shall be given to both sheriff and purchaser, and will have to abide by the consequences of it. Suppose the land had been purchased by a stranger, who had actually paid the purchase money to the sheriff, and he without any notice from the appellees of their claim to it or any part thereof, had paid it to Mr. Mann, towards satisfying his judgment, and had been suffered, as in this case, to have perfected the title by executing a deed of conveyance to the purchaser, could the sheriff have been compelled to pay so much of the money a second time to the appellees as would be sufficient to satisfy their judgment; or could Mr. Mann have been compelled to refund any portion of it, as he had not even received enough from the sheriff, to satisfy his judgment? It appears to me very clear, that neither the one nor the other could have been required to do so. The sheriff in order to ascertain the judgments that were liens upon the land, was not bound to look further than the judgment docket, but the judgment of the appellees not being noted or entered there, he could derive no knowledge therefrom, by inspecting that docket, nor by means of any certificate from it, given by the prothonotary, which it seems he actually had. The sheriff, therefore, could not have been said to have neglected his duty in the slightest degree whatever, but, on the contrary, it might have been said, that he had faithfully and properly performed it, by paying the money which had arisen from the sale of the land, to Mr. Mann, who appeared from the judgment docket: the only evidence that the sheriff was bound to regard, in the absence of all other being produced or given to him. Upon no principle then of justice, law, or equity, could the sheriff have been called on, in such case, to pay any portion of the money to the appellees after having paid it to Mr. Mann. And as to Mr. Mann, it is equally clear, that, as his debt was indisputably just, and as he had plenary and the only evidence that he was bound to look to, of its being the first lien upon the land at the time of the sale, he would have been justified not only in receiving but in demanding the money from the sheriff. He had been vigilant in preserving the lien of his judgment and in having it entered upon the judgment docket, so that every person concerned or interested might, upon inquiring at the prothonotary's, be apprized of it. His receipt of the

money could not have been said to be against good conscience, or in the least degree inconsistent with his just right or the discharge of any duty or obligation which he owed or could be said to be under to the appellees. Having received nothing more than what he had full reason to believe he had a right to demand, and to consider as his just due, there would seem to be no principle established or recognised in either law or equity, that would have compelled him to refund, or pay any portion of the money so received by him to the appellees, or back to the sheriff. The general principle would seem to be, in such case, that whenever the party may, with good conscience, receive the money, and there is no unfair practice or deceit in obtaining it, although it be money which he could not recover at law, the party paying cannot recover it back. Morris v. Tarin, 1 Dall. 148; Bogart v. Nevins, 6 S. & R. 369; Irvine v. Harlan, 10 S. & R. 219. And so in Espy v. Allison, 9 Watts, 462, it was held, that if the money was fairly and honestly received, though the party paying it was under no obligation to pay it, but paid it through mistake, he could not recover it back. The present case must be regarded as substantially the same with the one supposed, for although no money was in fact paid by Mr. Mann, the purchaser, excepting seventeen dollars and ninety-two cents to discharge the costs incurred by the sale, yet he did in effect what was equivalent thereto, by passing his receipt to the sheriff, showing that, by the consent of the latter, he had appropriated the purchase money of the land to the payment of so much of his judgment as it was equal to, and accordingly released it pro tanto. Upon this being done, the sheriff executed and delivered to him a deed of conveyance for the land, containing a receipt for the payment of the purchase money, which was acknowledged in open court and registered in due form. Mr. Mann having thus conscientiously and honestly satisfied the sheriff for the amount of the purchase money of the land, and obtained a deed perfecting the title for it to him, may be said to stand in the same situation as a bonâ fide purchaser without any notice whatever of the appellee's claim, and fully entitled to all the protection, that a bonâ fide subsequent purchaser or mortgagee for a valuable consideration of the land from George Loose himself, without actual notice of the judgment of the appellees and of its being still unsatisfied, would have been entitled to claim, under the act of Assembly already referred to. The appellees may look to the prothonotary for redress of the loss which they shall sustain, by his neglect to note the revival of their judgment on the judgment docket. But having lain by as they did, until eight months or more after the sale of the land was consummated, and the money arising therefrom appropriated, it is very clear, that they ought not

to be permitted to go either against Mr. Mann or the sheriff, for their money now. The order and decree of the court below, giving to the appellees the amount of their judgment out of the money raised from the sale of George Loose, the debtor's land, is reversed, it being the opinion of this court, that Mr. Mann is entitled to, and justified in retaining it. It is also ordered that the appellees pay the costs of the proceeding in the court below and the costs of the appeal.