# THE SUPREME COURT

OF

## PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH 1860.

38    9
f40SC¹247

## Stephens's Executors' Appeal.

*Lien of Vendor for Purchase-Money.—Award under Amicable Arbitration Act.—Sci. fa. on immature Judgment.—Notice of Lien, actual and constructive.—Levy and Extent of Land under an expired Lien.*

1. A vendor of land has a lien for the purchase-money by virtue of his title, only up to the time of conveyance: afterwards, he has no lien except it be created by judgment or mortgage.

2. Under the Amicable Arbitration Law of 1836, an award has no greater effect than the verdict of a jury, until judgment absolute be entered upon it.

3. Unless judgment absolute be entered on the lien docket, it cannot be continued by *scire facias* as against subsequent judgment-creditors without actual notice.

4. Though the lien docket is the usual notice of existing liens of judgments and awards, and the only docket to be examined, yet actual notice of a lien, independently of it, may be effective.

5. After the lien of a judgment is gone, a seizure, and extent of land on an execution upon it, will not continue the lien, though made while it existed between the parties to it.

THIS was an appeal by the executors of the last will and testament of James Stephens, deceased, from the decree of the Common Pleas of *Greene county* confirming the report of the auditor appointed to distribute the proceeds of the real estate of John B. Gordon.

James Stephens, by articles of agreement dated the 10th of February 1840, sold a tract of land to Isaac Shull. Afterwards, and before the money was all paid, Stephens died. His

(9)

executors, in order to enforce the payment of the balance of the purchase-money, proved the contract, obtained leave to make a deed, made their deed and tendered it to Shull, and demanded the balance of the purchase-money. Shull did not pay it. Accordingly the executors of Stephens brought an action of covenant, No. 16, February Term 1859, against Shull, to enforce payment. The deed tendered was filed with the case. The executors and defendant then entered into an amicable arbitration to settle and determine the cause. The arbitrators to whom the cause was referred, on the 18th of February 1854, awarded in favour of the plaintiffs $971.

On the same day the award was entered on the appearance and judgment docket. The plaintiff then gave notice that judgment absolute would be entered after four days, unless exceptions were filed in the mean time, as required by rules of court in such cases. No exceptions were filed, and accordingly judgment absolute was entered on the award on the 28th of February 1854. The judgment docket exhibited no other date than that of February 18th 1854, nor was there anything upon the judgment or lien docket to show when the judgment upon the award became absolute, or that a *sci. fa.* to revive, or a *fi. fa.* was ever issued thereon.

A *fieri facias* issued on this judgment to No. 51, June Term 1854, and the property levied on, and extended at an annual valuation of $193.75. The plaintiff then gave notice that the defendant might retain it at the valuation. This was accepted. He retained the possession, and paid the semi-annual instalments, or nearly so, up to the sale. At the time of the sale the balance on this judgment was $650. On the 7th of January 1857, E. Chalfant entered a judgment against Isaac Shull. On the 21st of February 1857, J. C. Flenniken, Esq., also entered a judgment against him. On the 7th of March 1857, Isaac Shull and wife, by deed, conveyed the property to John B. Gordon. On the 28th of February 1859, a *scire facias* issued to revive this judgment, No. 178, March Term 1859, with notice to John B. Gordon, terre-tenant. The issuing of this *scire facias* had not been noted on the judgment docket at the date of the sheriff's sale. After Shull had made his deed to Gordon, several judgments were entered against Gordon, and amongst others, one in favour of "E. Chalfant & Son" No. 124, December Term 1858, for $213.98; upon this judgment the property was levied on and sold for $1500. On the 15th of June 1859, the court appointed an auditor to distribute the fund, who reported that the judgment in favour of Stephens's executors had lost its lien, and that, therefore, he appropriated the fund to the junior liens in their order. To this report the executors of Stephens excepted. But the court, on the 28th December 1859, overruled the exception

and confirmed the report; from which decree the executors of Stephens took this appeal, assigning for error here, that the court below erred in not appropriating so much of the fund in court as would pay the balance of the judgment of Stephens's Executors v. Isaac Shull, and in confirming the auditor's report.

*R. W. Downey*, for appellants.—The judgment of Stephens's executors was for purchase-money. The fund in court came from the land sold by him to Shull. If the property had been sold or the judgment recovered for the balance of the purchase-money, the sheriff's vendee would have taken the entire legal and equitable estate, whether it was prior to others or not: Love v. Jones, 4 Watts 471; Day v. Lowrie, 5 Watts 510, 412; Harbach v. Reily, 7 Barr 81; Vierheller's Appeal, 12 Harris 105. A sale under another judgment should have the same effect, for neither vendor, vendee, nor creditors could be injured by it. The claim here is made not so much because of the lien of the judgment as in virtue of the lien for purchase-money. The estate both of Shull and Gordon were sold according to the auditor's distribution. The lien of the judgment and the lien for purchase-money are distinct things; the former is merely a remedy for enforcing the latter. The one relates to the articles of agreement, the other to the date of the judgment; the one is specific, the other general.

A sale may be made on a judgment which never was a lien or which had lost its lien: Packer's Appeal, 6 Barr 279. The lien of Stephens's executors' judgment was not lost. It dates from the 28th of February 1854, when judgment absolute was entered on notice under the rules of court. The *scire facias* on the 28th of February 1859 was in time, and continued the lien for five years: Green's Appeal, 6 W. & S. 327; Davidson v. Thornton, 7 Barr 128. That the only date in relation to this judgment in the judgment docket is February 18th 1854, can make no difference. Judgments were entered in the appearance docket from our earliest times, and under them process of execution was had. The Act of March 29th 1827 was only for *transcribing* or *preserving* the records, not to supersede them. As between the parties a judgment is good, even if not transcribed, or erroneously entered: Ridgway's Appeal, 3 Harris 177; Wood v. Reynolds, 7 W. & S. 406. The judgment docket is evidence by statute, if at all, nor does it import absolute verity: Jones's Estate, 3 Casey 336; Polhemus's Appeal, 8 Casey 328.

As to the Act of 1827 being intended to give notice to purchasers and lien-creditors, there was enough of it in this case to put a prudent man on inquiry, to wit, the names, number, terms, date, and amount. The rule as to recitals in deeds is broad enough to meet this case: Sug. on Vend. 333; 14 Vesey 426; 4 Harris 364.

[Stephens's Executors' Appeal.]

The award alone was no lien, but judgment was entered on it on the 28th of February, from which time it was a lien, and should have been entered on the proper docket.

The presumption is that the officer did his duty, but even if he did not, there was enough on the docket to give notice.

The land having been levied on and extended under this judgment, and the defendant allowed to retain it at the annual valuation, it was the same as if the plaintiff had elected to take it at the appraisement, under Act of June 16th 1836, and held it until his debt was paid out of the rents, issues, and profits, or rented it to defendant, and consequently a revival of *scire facias* was unnecessary: Barnett *v.* Washebaugh, 16 S. & R. 410; Strodes *v.* Coven, 3 Watts 257; Pomroy *v.* Smith, 17 Pick. 85.

*Black* and *Phelan*, for appellees.—Admitting that the sheriff's vendee took the entire title, both legal and equitable, the cases cited on the other side establish the doctrine that when a vendor takes a judgment for the purchase-money and retains the legal title, a purchaser under a subsequent lien against the vendee, takes only the equitable title, leaving the legal title undisturbed; but when the vendor makes a deed at the time when he takes a judgment for the purchase-money, and the land has been resold, and judgments entered up against the subsequent vendee, as in this case, a sheriff's sale on either of the judgments, passes the entire title. Here no title remained in the vendors, but in lieu of it they held a judgment which was prior to all others, and would have remained so if kept alive. They must stand or fall by that which they have taken in exchange for their title.

A levy cannot continue a lien independent of the judgment on which it is based: Jameson's Appeal, 6 Barr 280.

The true date of the lien is either February 18th or February 28th 1854. If the former, the *scire facias* issued February 28th 1859, was too late. If the latter, then the true date has not been transferred to the lien docket, nor is there any note therein whatever as to the *fieri facias* or the *scire facias*, as the law requires.

The Act of 1827 may have been intended to transcribe and preserve the records, and not to supersede the originals, but the directions to the prothonotary are so very minute, that more than this was clearly intended. The judgment docket is constructive notice, and purchasers and creditors are not bound to look beyond it: Ridgway & Budd's Appeal, 4 Harris 177; Hume's Appeal, 1 Barr 405; Bear *v.* Patterson, 3 W. & S. 233. The plaintiff must see that the entry is properly made, or look to the prothonotary for redress: Woods *v.* Reynolds, 7 W. & S. 406; 1 Barr 24; 7 W. & S. 200; 6 W. & S. 340; 4 Barr 295. Nor can it be amended so as to affect subsequent creditors: 6 Wharton

349. The law will not *presume* that the proper entries were made, when the facts do not warrant it.

The fact that this land was extended is not denied, but even if that was equivalent to the plaintiff's taking possession of it, it would not continue the lien. The Act of June 1836 authorizes a proceeding rather against the rents, issues, and profits, than the land, and this only on the condition that the circumstances of the particular case allow him to hold it so long. If sold during the extent, he falls back to his lien, if it have been kept alive and the proceeds of sale reach it. The position of the appellant is in flat contradiction of the Act of 1827, restricting the lien of judgment to five years, which cuts off every pretence of a lien, except by proper records: Jameson's Appeal, 6 Barr 283.

The opinion of the court was delivered, January 7th 1861, by

THOMPSON, J.—The auditor appointed to make distribution of the proceeds of the sale of the real estate of John B. Gordon, decided that the appellants' judgment was not entitled to any share, for the reason that it was not a lien at the time of the sale. That judgment was for purchase-money, due by the vendor of the defendant in the execution, to Stephens, from whom he had purchased.

The judgment was obtained by the executors, but, before doing so, they tendered and filed a deed for the premises, to Shull, the vendee. Shull had sold by deed to Gordon; so that, after the execution of the deed by the executors to him, Gordon was invested with the legal title. Consequently, a sale of the premises after that, would pass the entire estate to the purchaser, and the executors could only look to the lien of their judgment. This is admitted in the argument on both sides.

But the appellants seem to claim, that, although they had parted with the legal title at the time they recovered judgment, still the fact that the judgment was for purchase-money would entitle it to priority in the distribution. This is an error. Before conveyance, a vendor has a lien by virtue of the title; after it, he has no lien except it be by judgment or mortgage. This is the doctrine of all the cases on the subject: Love v. Jones, 4 Watts 465; Day v. Lowrie, 5 Id. 402; Harbach v. Riley, 7 Barr 81; Vierheller's Appeal, 12 Harris 105; Cannon v. Campbell, 10 Casey 309.

The appellants' judgment was obtained under the provisions of the Act of 16th June 1836, regulating amicable arbitrations. The statute requires the submission to be approved by the court and judgment to be entered on the award; giving to the record, in the mean time, only the effect of a verdict of a jury.

In Greene county there is a rule of court regulating the prac-

tice in amicable arbitrations, and it authorizes the prothonotary, on the award being filed, to enter judgment *nisi* thereon, and, after four days' notice of the filing of the award by the party wishing to enforce it, he shall be entitled to have judgment absolute entered.

The award was filed and judgment *nisi* entered on the 18th February 1854, and on the same day it was entered in the lien docket. On the 20th of the month, final judgment was entered pursuant to notice, but no further entry was made in the lien docket. It was conceded by the appellants' counsel that the judgment in the case was to be taken to be of the 28th of February, and that the judgment *nisi* did not constitute a lien. It is true he was forced to this by the fact that his *sci. fa.* would not be within five years, if the entry in the lien docket was to be considered the entry of the judgment. From an examination of the provisions of the Amicable Arbitration Law, we are inclined to think he was right. The judgment *nisi* was but a step towards final judgment; and until the final step was taken, by the terms of the act, the award was to have no greater effect than the verdict of a jury. The final step was not taken until the 28th of February 1854, when judgment absolute was entered. It became a lien clear of all doubt then, only as between the parties. It seems to me that this excludes the idea of an anterior lien by virtue of an immature judgment.

The appellants contend, however, that the *sci. fa.* issued on the 28th of February 1859 was in time, and that the lien was therefore continued as to subsequent judgments, notwithstanding the judgment may not have been entered on the lien docket.

Conceding, for the present, that the *sci. fa.* was in time to have continued the lien if there were no other objections to it as such, can we affirm the second proposition, that it could be so continued as against subsequent judgment creditors without entry on the lien docket or actual notice?

That a judgment docket should be kept, into which all judgments are to be entered, and on which are to be noted *sci. fas.* and executions in the case, is the plain requirement of the Act of 29th March 1827. That this docket was intended to be the usual notice of existing liens of judgments and awards of arbitrators, was undoubtedly intended, and often so said: 3 Harris 177; 7 W. & S. 406; 1 Barr 24; 7 W. & S. 200; 6 Wh. 340. It is the only docket to be examined with this view: 1 Barr 405; 4 Harris 117; 3 W. & S. 233, and 7 Id. 406. We do not mean to say that it is the only source of notice. We have recently held that actual notice of lien independently of the docket may be effective: York Bank's Appeal, 12 Casey.

We cannot, therefore, agree that subsequent judgment creditors were postponed by a judgment not entered in the lien docket,

[Stephens's Executors' Appeal.]

and of which they had no actual notice, upon any ground yet suggested. The argument against the effect intended by the provision for such a docket, comes too late. It is well settled that the entry of the judgment only on the appearance docket is not notice, and to judgments only so entered those subsequent in date in the lien docket will take precedence, unless under circumstances not appearing in this case.

The last position taken by the appellants is, that, as the property was extended on their execution, and retained by the defendant, paying the appraised rental, that a *sci. fa.* was not necessary to continue the lien as against subsequent judgments.

It was not claimed that the lien of the execution held it because issued and seizure made before any of the subsequent judgments were entered, so as to bring it within the principles alluded to in Packer's Appeal, 6 Barr 277. Nor could it have been, for the reason that when the execution issued the judgment was a lien as between the debtor and creditor, and, as was said in Jameson's Appeal, Id. 280, "A judgment and an execution thereon have not, under our Acts of Assembly, distinct and independent liens upon the same land."

The question recurs, then, did the seizure and extent continue the lien, after that of the judgment was gone, it having been made while the judgment was a lien between the parties to it? I think the doctrine of the last-mentioned case and the Act of 1827 will go far to settle this point.

The execution and seizure had no lien independently of the judgment. That is the principle of the case just cited. The Act of 1827 provides that "the lien of a judgment shall not be continued beyond five years, notwithstanding an execution may be issued thereon;" and "that no order or rule of court, or any other process or proceeding thereon, shall have the effect of obviating the necessity of the renewal in manner herein prescribed, of any judgment whatever." Now apply these doctrines and enactments to the case in hand, and it seems to me but little difficulty exists in the case on this point.

The sale by the testator was to Shull, and the judgment by the executors, which now claims distribution, was obtained against him on the 28th February 1854. On this judgment to No. 51 of May Term 1854 a *fi. fa.* issued, and the land of Shull was levied and inquisition held, and the property extended at the yearly rental of $193. The possession was retained by the defendant under the appraisal, and the rents were paid to the appellants by him until he sold and conveyed to Gordon on the 7th of March 1857. On the 7th of ~~June~~ 1857, Chalfant obtained a judgment against Shull for $149.61, and on the 21st of February following, J. C. Flenniken also obtained judgment

[Stephens's Executors' Appeal.]

against him for $114.24.   Those judgments were all liens when Shull sold to Gordon.

After Gordon purchased, judgments were obtained against him, one in favour of E. Chalfant & Son, to December Term 1858, for $213.98, and upon it the property from which the fund comes was sold for $1500, and the money brought into court for distribution; and from the decree comes this appeal.

We think the auditor was right in refusing to distribute as claimed by the appellants—their judgment not being entered in the lien docket, and nothing shown which would give effect to it as against the subsequent judgments.   Notwithstanding this defect, it was rightly decided that it was not a lien and not entitled.   It was a question of lien on distribution; and, as that did not exist in the case, the right to claim the proceeds against the other judgments did not exist.   The extent did not, *proprio vigore*, extend the lien, or, what is more to the point, did not dispense with the evidence of it—in fact, the existence of it.   To give it such efficacy, would be to overthrow the lien docket altogether; for the exceptions to the requirement that the judgment should appear there, would be as numerous as the cases of extent are frequent.   Without taking up more time in the discussion, we affirm the decree of the court below.

Decree affirmed at the costs of the appellants.