# Citizens National Bank & Trust Company of Lehighton v. First National Bank of Lehighton

*Heydt, Balliet & Seidle*, for plaintiff.

*George E. Gray*, for defendant.

RENO, P. J., thirty-first judicial district, specially presiding, July 3, 1933.— This proceeding for a declaratory judgment has for its object an adjudication of a controversy among judgment creditors concerning the order and priority of their liens, so that they may properly bid at the sheriff's sale. The property will not, in the unsettled state of the market, bring enough to pay all the liens in full. This, we think, presents a case which should be adjudicated by a declaratory judgment.

The following facts appearing in the pleadings become the basis of our decision. On the prothonotary's index there appear the following judgments against Frank P. Diehl. Only that data concerning the entries which is essential to this decision is here stated.

1. First National Bank..............Jan.  7, 1924 D. S. B.
2. Citizens National Bank...........July 30, 1925 D. S. B.
3. Citizens National Bank...........May 28, 1926 D. S. B.
4. First National Bank..............Dec. 18, 1929 Revival of no. 1.
5. Citizens National Bank...........July 29, 1930 Revival of no. 2.
6. Citizens National Bank ..........May 28, 1931 Revival of no. 3.

It will be noticed that, according to the judgment index, judgment no. 1 was entered January 7, 1924. It was not revived until December 18, 1929, more than 5 years after the date of the original entry. As a result of that delay, judgments nos. 2 and 3 became prior liens and, having been revived within the statutory period, the order of priority of liens now is, no. 2, 3, 1.

But the true fact is, as appears from the continuance docket, that judgment no. 1 was entered on January 7, 1925, and not on January 7, 1924. The prothonotary erred in transcribing the date of the lien from the continuance docket to the judgment index. If the actual date as shown by the continuance docket prevails, then judgment no. 1 was revived in due time and the order of priority remains, no. 1, 2, 3.

The contest here is between these respective lienholders and the question is whether, as between successive lienholders, the continuance docket or the judgment index shall determine the order of priority.

Before examining the legal question, it should be stated that there is no allegation that Citizens National Bank had actual notice of the record of the judgment as shown on the continuance docket. Nor does it appear that Citizens National Bank agreed to an amicable revival of its judgments because of the position it had attained by the failure of First National Bank to revive its judgment in due time. It is therefore unnecessary to consider the line of cases which hold that if a subsequent incumbrancer has actual notice of a judgment defectively indexed before his rights attach it is equivalent to the constructive notice required to be given by the judgment docket. See Butts v. Cruttenden, 14 Pa. Superior Ct. 449, and the cases there cited. Nor can it be contended that the judgment index contained anything which "puts a party on inquiry" and therefore "amounts to notice" within the doctrine of Parke v. Neeley, 90 Pa. 52, and First National Bank of Spring Mills v. Walker et al., 296 Pa. 192. It is true that the entry of judgment no. 1 contained under the heading "Date of Interest" the words "Nov. 24, 1924," but, of course, the parties might have bargained that interest on a note entered January 7, 1924 should not commence to run until November 24, 1924. That statement was not inconsistent with the tenor of a note entered on January 7, 1924, and therefore was not so significant as to put a subsequent creditor upon inquiry.

The question being thus narrowed, the answer seems plain. The judgment index was provided by the Act of March 29, 1827, P. L. 154, sec. 3, 9 Sm. L. 319. That act, briefly stated, requires the prothonotary to keep a docket of judgments in the order of their entry, together with the revival thereof. The judgment first appears on the continuance docket or, as it is sometimes called, the appearance docket, and the details required by the Act of 1827, supra, are copied into the judgment docket: Updergraff v. Perry, 4 Pa. 291. The judgment docket is therefore, as between it and the continuance or appearance docket, the record of the judgment. At least, this is true as to subsequent purchasers and creditors who are bound by what that record reveals but are not bound to look beyond it: Wood v. Reynolds, 7 W. & S. 406; Smith's Appeal, 47 Pa. 128; Hutchinson's Appeal, 92 Pa. 186. Of course, the original parties to the judgment are bound by it even though it appears only upon the continuance or appearance docket: Act of April 3, 1843, P. L. 127. But as to purchasers and mortgagees the judgment index was, after the Act of 1827, supra, and certainly after the Act of April 22, 1856, P. L. 532, sec. 3, the primary record: Crouse et al. v. Murphy et al., 140 Pa. 335.

At the base of the legislation and the decisions lies the principle that, although it is the prothonotary who makes the entries upon the books, it is the duty of the judgment creditor to see to it that his judgment is correctly indexed: Crutcher et al. v. Commonwealth, 6 Wharton 340; Bear v. Patterson, 3 W. & S. 233; Mehaffy's Appeal, 7 W. & S. 200; Mann's Appeal, 1 Pa. 24. Hence, as these cases show, the consequences of a defective judgment index record fall upon the party who failed to assure himself of its correctness.

Now, July 3, 1933, it is adjudged and declared:

1. That the judgments of Citizens National Bank entered respectively on July 30, 1925, and May 28, 1926, and revived respectively on July 29, 1930, and May 28, 1931, are prior to the judgment of First National Bank entered on January 7, 1924, and revived on December 18, 1929, and must be paid first out of the proceeds of any sales of property on which they are liens.

2. The costs of this proceeding shall be paid by the defendant.

From Jacob C. Loose, Mauch Chunk, Pa.